FITZGERALD v. RAILROAD.

(Filed May 25, 1906).

*Railroads—Fellow Servant Act—Master and Servant—Negligence—Res Ipsa Loquitur—When Doctrine Applies.*

1.  Under the Fellow Servant Act, which operates on all employees of railroad companies, whether in superior, equal or subordinate positions, if the plaintiff, a hostler of the defendant, was injured as the proximate cause of the negligence of his helpers in shoveling coal from a car into a tender, the defendant is responsible.

2.  Direct evidence of negligence is not required, but the same may be inferred from acts and attendant circumstances, and if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence.

3.  In an action for injuries to a hostler of a railroad from the falling of a piece of coal which his helpers were transferring from a coal car to a tender, it would be a negligent act for one of the helpers to undertake to throw a lump of coal weighing 100 pounds across the space, when he must have known the chances were much against his success, and where a failure might cause death or serious injury to his co-employe who he knew was working near.

4.  The doctrine of *res ipsa loquitur* is not confined to cases of the failure of some mechanical appliance or contrivance or machine, which fails in some unusual and unexpected manner to do its work properly.

5. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.

6. Where a hostler of a railroad company was occupied with his duties between a coal car and a tender and his helpers were shoveling coal from the car to the tender and knew he was working around the tender, and he was injured by a 100 pound lump of coal falling on him, the doctrine of *res ipsa loquitur* applies.

BROWN, J., dissenting.

ACTION by Obediah J. Fitzgerald against the Southern Railway Company, heard by *Judge G. W. Ward* and a jury, at the October Term, 1905, of the Superior Court of GUILFORD.

This was an action to recover damages for an injury caused by alleged negligence on the part of defendant. No contributory negligence was alleged in the answer and the cause was submitted to the jury on two issues. 1. As to the defendant's negligence causing the injury. 2. As to damages.

There was evidence tending to show that plaintiff on the 11th day of July, 1904, at the time of the injury, was in the employment of the defendant as a hostler on the yard of the defendant at Winston, N. C., and it was his duty with his helpers, who were employed by the defendant, when any engine came in, to take charge of and coal it, clean out the fire and put it away in its proper place. On the morning of the injury the engine had been moved up over the pit in which the fire was to be dumped along side of the coal car from which the coal was to be thrown into the tender. That this coal car was standing on a track parallel with the one on which the engine was standing and between the parallel tracks there was an open space, across which the coal was to be thrown. The engine had been standing with fire in it all

night and the fire had to be cleared from the engine and the water turned on the fire in the pit while the coaling was in progress. After the fire had been cleared from the engine and thrown in the pit, on the occasion of the injury, the water was turned through the hose which was attached to a hydrant, when the hose blew out so that the hose had to be fastened on again, and there was nobody to do this but the plaintiff; he was the only man to do this work around that point. The hydrant was in the open space between the coal car and the rear of the tender, and when the hose blew off, which had been insecurely fastened by the tank-man to the hydrant, the plaintiff squatted down by the tank with the back of his head towards the tender and was attempting to fasten the hose on the hydrant; he was two and a half feet from the tender and about eight feet from where the negroes were at work throwing coal straight across into the place in the front part of the tender for receiving and holding it.

The plaintiff, in his own behalf, testified that the lump of coal weighed about 100 pounds and evidently described the size and shape of the coal by indicating the same with his hands. He was asked (p. 11, record), "How large was the coal?" and replied, "Of course I could not tell the weight then, but the lump seemed to be about that long and about that large around. Kind of an odd shape; seemed to be about a 100-pound lump, something like that." The court, on stating this part of the testimony to the jury, said, "As I got his testimony down, it was a large piece of coal, about 20 by 20 inches and a 100 pound lump." There was no objection to this part of the statement of the court and we take it that without question, the witness, when he said, "About that long and that large around," indicated to the court and jury the size of the lump by the position of his hands or some other objective measurement.

On his examination in chief, this is stated: That one of the negroes threw the lump of coal that struck the witness. On cross-examination he stated that he did not know which one

of the negroes threw the coal, because he could not see it leave their hands up on the car while he was down there discharging his duty, and for the same reason he did not know whether it went up on the tender and rolled off or struck the tender and fell off. In answer to a question by the defendant, the witness stated: "Q. Do you know who threw it? A. No, I do not know which one threw it, because I could not see it leave their hands up on the car, while I was there discharging my duty." "Q. You don't know whether it came directly from the shovel on to your head or whether it went up on the tender and rolled off?" "A. No." "Q. Nor whether it struck the tender and fell off?" "A. That is the information I had." The witness further testified that the coal should have been thrown into its bed or basin in the forward part of the tender. The negroes were engaged in throwing coal in the front end of the tender and did not have to throw the coal on the back end at all; that he did not know whether the boys saw him at the time; that they could have done so; he was at the rear end of the tender and on their side, but they knew he had to work all around them while they were coaling. The plaintiff was permanently injured and disabled. There was a motion for nonsuit which was overruled and the defendant excepted.

The court, after defining at length negligence and proximate cause, charged the jury in substance that if defendant through its agents failed to exercise proper care, that care which a prudent man should use under the circumstances, in throwing the coal from the car to the tender, and such negligence was the proximate cause of the plaintiff's injuries, they should answer the first issue 'yes.'. The charge also put the burden of the issue on the plaintiff. Defendant excepted. Verdict for plaintiff and from judgment thereon defendant appealed.

*John A. Barringer* for the plaintiff.
*King & Kimball* for the defendant.

HOKE, J., after stating the facts: The statute known as the Fellow Servant Act, published as chapter 56, Private Laws 1897, where the same applies, has the effect of making all co-employees of railroad companies agents and vice-principals of the company so far as fixing the company with responsibility for their negligence is concerned. While commonly spoken of as the "Fellow Servant Act," it is entitled, "An Act to Prescribe the Liability of Railroads in Certain Cases," and it operates on all employees of the company, whether in superior, equal or subordinate positions. The two hands, therefore, who were shoveling coal, while they were there as "helpers" to the plaintiff, were the agents of the defendant, and, contributory negligence on the part of the plaintiff not being proved or even alleged, if the plaintiff was injured as the proximate cause of their negligence, the company is responsible.

We do not understand that the defendant controverts or desires to controvert this position, but rests its defense on the ground that there is no evidence offered which requires or permits that the plaintiff's cause be considered by the jury, and this on the idea, chiefly, that so far as the testimony discloses, it is just as probable that the injury was the result of an accident for which the defendant is in no way responsible, or for negligence which may be imputed to the defendant as an actionable wrong. While this may be the law under given circumstances, we think that the principle has no place in application to the facts of the case before us.

It is very generally held that direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances, and it is well established that if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence. Thus, in Shearman & Redfield on Negligence, section 58, it is said: "The

plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover unless the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default, but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence. As already stated, the plaintiff is not required to prove his case beyond a reasonable doubt, though the facts shown must be more consistent with the negligence of the defendant than the absence of it. It has never been suggested that evidence of negligence should be direct and positive. In the nature of the case, the plaintiff must labor under difficulties in proving the fact of negligence, and as that fact.is always a relative one, it is susceptible of proof by evidence of circumstances bearing more or less directly on the fact of negligence; a kind of evidence which might not be satisfactory in other classes of cases open to clear proof. This is on the general principle of the law of evidence which holds that to be sufficient and satisfactory evidence which satisfies an unprejudiced mind."

In accordance with this general doctrine, in a well considered case of *Howser v. Railroad,* 80 Md., 146, *Roberts, J.,* says: "These and many English and American cases clearly establish the fact that it is not requisite that the plaintiff's proof in actions of this kind should negative all possible circumstances that would excuse the defendant. It is sufficient if it negatives all probable circumstances that would have this effect." In *Whitney v. Clifford,* 57 Wis., 156, *Cassady, J.,* said: "The plaintiff is not required to prove his case so clearly as to exclude the possibility of any other theory." In *Stepp v. Railroad,* 5 Mo., 229, it is held: "Direct evidence

of the want of the exercise of due care is not to be required to be produced.  Surrounding circumstances may afford as conclusive proof as direct evidence."  Applying these rules to the case before us, we think the plaintiff was clearly entitled to have his cause submitted to a jury and the motion to nonsuit the plaintiff was properly overruled.

This was not an ordinary case of loading coal into a wagon or car where a lump of the coal might roll off at any time with no reasonable prospect of hurting anybody; on the contrary, these hands—and for their conduct, as we have seen, the defendant is responsible—knew that the plaintiff was working somewhere around and near the engine, and where, if a piece of coal rolled off, it was likely to strike him, and if a heavy piece should roll and strike, it would do him serious injury.  They were, therefore, charged with a high degree of care in this respect.  This statement imports no infringement on the doctrine which obtains with us that there are no degrees of care so far as fixing responsibility for negligence is concerned.  This is true on a given state of facts and in the same case.  The standard is always that care which a prudent man should use under like circumstances.  What such reasonable care is, however, does vary in different cases and in the presence of different conditions, and the degree of care required of one, whose breach of duty is very likely to result in serious harm, is greater than when the effect of such breach is not near so threatening.

Throwing this coal, some of it, at least, consisting of heavy lumps, into a tender, with a man walking around in a position where a miscalculation or wild throw was not unlikely to cause great damage, presents a very different proposition and demands a much higher degree of care than the ordinary loading of coal from one vehicle to another.  These hands, then, charged with this knowledge and this degree of care, were given the task of throwing the coal from the car across the intervening space into the forward part of the ten-

der; they were not to throw it into the rear of the tender, where the water tank of the engine was placed, which was as high or nearly on a level with the railing of the tender. This was not the place for the coal, and any thrown there was very likely to fall off. The weight of the coal, a hundred pound lump, makes it very probable that one of the hands undertook to throw a lump of coal too large for him; most likely he undertook it without a shovel, as the size, 20 by 20 inches, would hardly permit that a shovel could be used for the purpose; and, staggering under the weight, he failed to clear the space or control its direction; the piece struck the railing of the tender, or outside and below the rails, and, falling to the side, struck the plaintiff and did the injury. This is not only very probable from the circumstances, but there is direct evidence to this effect. In answer to a question by the defendant, the plaintiff testified: "Q. Do you know whether it struck the tender and fell off?" "A. That is my information." If this is the way it occurred, and we think it much the most probable inference, it would, in our opinion, be a negligent act for one of those hands to undertake to throw a lump of coal of that weight across that space, when he must have known the chances were much against his success, and where a failure might cause death or serious injury to a co-employee working near. Indeed, there could hardly be a reasonable suggestion made on the evidence, with the duty incumbent on these men to observe a high degree of care, which would negative the existence of negligence. If they undertook to throw a lump of coal too heavy for them across the space, so heavy that they could not get it over or control its direction—and they must have known or should have known this when they lifted the coal—they would be negligent. If they threw the coal in the first instance, back on the water tank where it was likely to roll off, this would be a negligent act. If they continued to pile coal on the forward part of the tender, where

it belonged, till it was even with or above the top of the tender so that the coal was likely to roll off, either directly to the ground or over the tank in the rear, it would be negligence to do this without warning to the plaintiff and giving him an opportunity to be on the lookout. They were in a position to note the condition of the coal, and the plaintiff was not. He was on the ground engaged in the necessary discharge of his duties and bending over in the effort to connect the hose with the hydrant.

While we have thus far made no reference to the doctrine of *res ipsa loquitur* for the reason that this doctrine is more usually invoked when nothing but the objective facts attendant upon an injury can be produced, while here, we have the additional evidence, frequently not obtainable, that the agents of the defendant, and for whose conduct the defendant is responsible, by their act caused the injury complained of, we are of opinion that the doctrine applies with full force to the facts of this case.

It was suggested for the defendant that *res ipsa loquitur* is only applicable in case of the failure of some mechanical appliance or contrivance or machine, which fails in some unusual and unexpected manner to do its work properly, and the default is imputed for negligence to its owner or the employee who is charged with the duty of keeping it in order. But the doctrine is not so confined. Courts of the highest authority have applied it in cases not at all dissimilar to the one before us, and approved text writers state the principle to like effect. In Shearman & Redfield on Neg., sec. 59, it is said: "In many cases the maxim *res ipsa loquitur* applies. The affair speaks for itself. It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury, but in these cases, the surrounding circumstances which are necessarily brought into view, by showing how the accident occurred, contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform

it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer." In Hale on Torts, 482, it is said to apply "where the thing is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care." And in Labatt on Master and Servant, section 843, it is said: "The rationale of this doctrine is that in some cases the very nature of the occurrence may of itself and through the presumption it carries, supply the requisite proof. It is applicable when, under circumstances shown, the accident presumably would not have happened if due care had been exercised. Its essential import is that, on the facts proved, the plaintiff has made out a *prima facie* case without direct proof of negligence"— citing a large number of instances where the maxim was upheld, as when a piece of coal falls from the tender of a passing train and hits a section hand who is standing a reasonable distance from the track, *(Railroad v. Wood* [Tex. Civ. App.], 63 S. W., 164), and where a large piece of coal falls from a tub where it is being hoisted from the hold of a steamer. *Joist v. Webster,* Quebec, 15 C. S., 220.

In *Scott v. Dock Co.,* 3 Hurl. & Colt, the plaintiff proved that while conducting his duties as custom officer, he was passing in front of a warehouse in the dock yard and was felled to the ground by six bags of sugar falling upon him, and the principle is declared as follows: "There must be reasonable evidence of negligence, but when the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendant that the accident arose from want of care. In *Jensen v. The Joseph B. Thomas,* 81 Fed. Rep., 578, the principle is announced in almost identical

words: "The occurrence of an injury may itself, in connection with other circumstances, sufficiently show negligence as to justify a judgment for damages, where the thing causing the injury is under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if ordinary care is used." "And the principle was applied in a case where one of the vessels had set an empty water keg on the loose hatch-covers at the side of the hatch in such a position that an accidental shock or jarring of the covers might let the covers into the hatch while stevedores were working in the hold." See also *McCray v. Ry.* 89 Texas, 168. In this case it was held as follows:

"1. When a servant sues his employer for damages arising from injuries caused by the negligence of the latter, the plaintiff must prove the negligence of the defendant, and proof of the accident and injury alone will not be sufficient to authorize a recovery. But the circumstances attending the injury may, without any direct evidence, be sufficient to establish the fact of negligence.

"2. A brakeman, sitting on the side of a car in a train running between stations was killed by a steel rail, part of the load of a car in front of him falling therefrom, one end striking the ground and the other sweeping along side of the train and striking him. Without other proof of negligence in the loading on the car of rails, the circumstances were sufficient to take the case to the jury and it was error to direct a verdict for the defendant."

In *Howser v. Railroad,* 80 Md., 146, the maxim is held to apply where a plaintiff was walking along a foot-path outside of the right of way and was injured by a half dozen cross ties which fell upon him from a gondola car attached to a train passing along the defendant's road. In *Sheridan v. Foley,* 58 N. J. Law, 230, it is said: "It is urged, however, on behalf of the defendant that the plaintiff was bound, in order to entitle him to a verdict, to prove affirmatively that the

injury which he received was caused by the negligent act of the defendant or of his servants; that the mere proof that the plaintiff was injured by a brick falling from the hod of one of the defendant's hod-carriers, or from a scaffolding upon which some of the employees of the defendant were engaged in laying a wall, does not, standing alone, raise any presumption of negligence; and that, as there was no evidence offered to show under what circumstances the brick fell, there was nothing in the case to warrant the jury in inferring that the injury complained of was the result of the carelessness of the defendant or of his employees. While it is true, as a general principle, that mere proof of the occurrence of an accident raises no presumption of negligence, yet there is a class of cases where this principle does not govern—cases where the accident is such as, in the ordinary course of things, would not have happened if proper care had been used. In such cases, the maxim *res ipsa loquitur* is held to apply, and it is presumed, in the absence of explanation by the defendant, that the accident arose from want of reasonable care."

In *Armour v. Golkowska*, 95 Ill. App., 492, it is held:

"1. Where an employee in a packing house, while at work at a table trimming meat, was injured by the fall of an empty barrel from the platform above her, and there is no evidence by way of explanation as to how the barrel came to fall, the doctrine of *res ipsa loquitur* applies.

"2. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care."

See also *Electric Co. v. Sweet*, 57 N. J., 224; *Seybolt v. Railway*, 95 N. Y., 562; *Lyons v. Rosenthal*, 11 Hun. (N. Y.), 46; *Hart's case*, 157 Ill., 9; *Byrne v. Brodie*, 2 Hurl. & Colt, 721.

These authorities we think clearly establish that the maxim of *res ipsa loquitur* applies in a case like the one before us. In the ordinary course of things, if these hands had been reasonably attentive to their duty and reasonably observant of proper care, the event would not have occurred. From the fact that it did occur and from the attendant circumstances and in the absence of any explanation, the inference of negligence was reasonable, and much the most probable, and in such case the order for a nonsuit would have been erroneous.

In the well considered opinion of *Mr. Justice Connor* in *Womble v. Grocery Co.*, 135 N. C., 474, it is established and declared that "this principle of *res ipsa loquitur*, where it applies, carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, and not, we think, raising any presumption in his favor, but simply entitling the jury, in view of all the circumstances and conditions as shown by the plaintiff's evidence, to infer negligence and say whether upon all the evidence the plaintiff has sustained his allegation." This was the course pursued by the judge below, who charged the jury that the burden was on the plaintiff to show by the greater weight of the evidence that the defendant was negligent and that the negligence was the proximate cause of the injury, explaining the meaning of the terms and further applying the facts as presented, but the burden was placed on the plaintiff throughout. There was no error, therefore, either in refusing the motion for nonsuit or in the charge as given.

Our attention is called to the case of *Raiford v. Railroad*, 130 N. C., 597, as authority for holding that the facts of the present case present no evidence of actionable negligence. The case, we think, does not sustain the position. In that case a piece of iron fell from an engine, and, taking an eccentric course, struck and seriously injured the plaintiff who was working near the engine. The iron had fallen by reason of a co-worker having previously loosened or removed a nut

that held the same in place. The only negligence alleged was the act of the co-employee in unscrewing the nut. There was no testimony showing or tending to show that the nut had been improperly or negligently removed or that any injury was likely to follow, and the occurrence was held to be an excusable accident. In our case the very question is whether the act of the defendant was negligent in throwing the coal, and, as we have endeavored to show, there was ample evidence from the facts and circumstances that those employees must have been or very probably were negligent, or the event would not have followed. There are cases in other jurisdictions which appear to conflict with the decision here made, but a careful examination will disclose that most of them can be distinguished and upheld on grounds entirely consistent with the principles declared in the present opinion. And where this cannot be done, we think those decisions are not in accord with the great weight of authority in cases of this character.

There is no error and the judgment below is

Affirmed.

WALKER, J., concurs in result.

BROWN, J., dissenting. As I have utterly failed, after earnest effort, to evolve from the evidence in this case any rational theory of negligence upon the part of the defendant or its servants, I am unable to concur in the judgment of the court.

As I understand the law, the party who affirms actionable negligence must establish it by proof sufficient to satisfy reasonable minds. The evidence must show more than the mere probability of a negligent act. Moreover, if the injury complained of may have resulted in one of two different ways, or from one of two different causes, for one of which the defendant is liable, but not for the other, the plaintiff

cannot recover. Neither can he recover if it is just as probable that the injury was caused by the one as by the other. This principle is formulated from the text-writers and numerous adjudications and is an accepted doctrine in the law of negligence. It has also been repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is encumbent upon the plaintiff to furnish evidence to show how and why the accident occurred, some fact or facts by which it can be determined by the jury, and not left entirely to conjecture, guess or random judgment, upon mere supposition. *C. & O. R. R. v. Heath,* 103 Va., 66; *R. R. v. Sparrow,* 98 Va., 630; *R. R. v. Cromer,* 99 Va., 763, and cases there cited

If it is just as probable from the evidence that the injury was the result of one cause as another, the plaintiff cannot recover. *Grant v. R. R.,* 133 N. Y., 657; *Searles v. Mfg. Co.,* 101 N. Y., 661.

The Court of Appeals of Kentucky formulates the rule in these words: "When the question is one of negligence or no negligence, it is well settled law that where the evidence is equally consistent with either view, the existence or non-existence of negligence, the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it." *Gas Co. v. Kaufman,* 48 S. W., 439. To the same effect are Thompson on Negligence, p. 364, and Labatt on Master and Servant, vol. 2, sec. 836.

The latter writer says there must be a juridical connection between the master's negligence and the injury, the burden of proving which is on the servant; also, that "the plaintiff must introduce testimony to show that the injury is more naturally to be attributed to the negligence of the defendant than to any other cause."

The English courts uniformly hold that where plaintiff's evidence is equally consistent with the absence as with the

existence of negligence, there can be no recovery. *Cotton v. Wood,* 98 E. C. L., 566.

An employer of labor is not an insurer against injury. The servant assumes such risks as are naturally incident to the work he engages to do. The master is required to provide only against dangers that can reasonably be expected and not against the consequences of accidents that may or may not happen. *Williams v. Railroad,* 119 N. C., 746.

The evidence of the plaintiff himself is all that throws any light upon this occurrence, and his version discloses an accident, pure and simple, either "an event from an unknown cause," or "an unusal and unexpected event from a known cause," a "chance casualty." The plaintiff had entire charge of the work of coaling and watering defendant's engine. He had three laborers under his control. Two of them, by plaintiff's direction, were engaged in throwing coal from a coal car into the coal bin of the tender of an engine, which is in the forward part of the tender. The coal car was alongside the tender and only a few feet from the coal bin in it. At the time of the occurrence plaintiff was on the ground at the rear of the tender, stooping down fixing a water hydrant, and while so engaged a piece of coal struck plaintiff and injured him. At the time this happened the coalers were knee deep in the coal car throwing coal into the forward part of a tender, probably twenty-five feet long, while plaintiff was at its extreme rear end. Plaintiff did not notify the coalers where he was or what he was doing. As much stress is laid on the fact that the coalers knew that plaintiff was "around there somewhere" at the time of the injury, I quote plaintiff's evidence: "And they knew that you were around about there somewhere; did not know where you were?" Answer: "No, sir, I don't think they knew right then where I was." "You knew where they were?" "Yes, sir." It being admitted that the coalers did not know where the boss was when the chunk of coal was thrown, which it is

claimed hit him, it was not their duty to keep a lookout for him. It was his duty to keep a lookout for them, or to apprise them of his whereabouts. He was "foot loose" and knew exactly what his men were doing. On the contrary, they were standing knee deep in a coal car, all their attention necessarily rivetted on their work and straining every muscle to load the heavy coal into the tender. They could not do their work and look out for the boss. He could easily look out for them and keep out of danger. If such coaler had to stop and ascertain the whereabouts of the boss before throwing each shovelful of coal, they would have made such slow time on the loading up that the boss would have soon discharged them to save his own head. If, then, it was not the duty of the coalers to keep up with the whereabouts of the boss, but was his duty to keep a lookout himself, then the coalers have been guilty of no negligence in that respect. If it had been shown that at the very time the lump of coal was thrown, which it is claimed hit the plaintiff, the man throwing it had actual knowledge of plaintiff's position and situation, there might be something in plaintiff's contention that the lump was recklessly thrown. But plaintiff himself distinctly acquits the men of any knowledge of his then whereabouts.

The evidence is fatally defective because it fails to show how or why the piece of coal fell on plaintiff's head. Plaintiff distinctly states that he did not see either man throw it, and further testified as follows: "You don't know whether it came directly from the shovel onto your head, or whether it went up on the tender and *rolled off?*" Answer: "No, sir." "Nor whether it struck the tender and fell off?" Answer: "That is the information I had." "I am talking about what you know." "No, I don't know." "You just simply know that a piece of coal fell down and hit you on the head?" "Yes, sir." It is contended that this quotation from the record contains evidence that a lump of coal hit

the side of the tender and ricochetted and struck plaintiff. It ought not to require an argument to show that such evidence is not "direct evidence" that the lump of coal hit the tender and glanced off. The plaintiff states positively that he does not know it, but that *his information* was it struck the tender and fell off. Although this came out before objection could be made and was not stricken from the record, it surely cannot be called "evidence of a fact." It does not even amount to the dignity of hearsay evidence, for plaintiff does not state who told him so. Had he named his informer, a definite statement of an ascertained person would have been before the jury, although not made under oath, and would have been competent unless objected to. As it is, the statement has no probative force, and is of no sort of value as evidence. Suppose, however, that during the process of loading the tender a piece of coal did strike its side and glance off, or landed on top and failing to stick, rolled off, that does not prove negligence. Loading coal is rough and heavy work, and there is no suggestion that the men doing it were not fully competent for the purpose. They could not be expected to handle coal and load a tender with that care and delicacy usually employed in placing eggs in a basket. A piece of coal may have fallen short of the mark and still the coaler may have used reasonable care in throwing it. It is no evidence that he did not. Common observation teaches that it is something usually incident to loading from one car to another, and no one was in position to know this better than the plaintiff, whose business it was to load tenders. Any one who has noticed the loading of a wagon from a brick kiln or the unloading of corn into a barn doubtless saw some bricks and ears of corn fall short of their destination. Short throws are frequently "accidents that will happen in the best regulated families." But I cannot see how it is possible that the lump could have hit the side of the tender, and, glancing off sideways, struck the plaintiff more than eight

feet distant. I can see how it may have landed on top of the pile in the tender and rolled off, but that surely would be no evidence of negligence. It is suggested that it was negligence to have undertaken to throw a hundred pound lump the distance between the coal car and the tender. Why? Obviously from the lack of strength in the thrower. If it struck the tender with sufficient force to ricochet it as far as the rear end of the tender where the plaintiff then was, there was no lack of strength in the brawny arms that threw it. Had the throw been a weak one, the lump would have struck the tender and sunk straight to the ground. Spent balls do not ricochet. If the coaler threw the lump with sufficient force to land it in the tender and accidentally missed the mark, he did what many a marksman has done before. None of us can always hit the mark we aim at. From the very character of the operation it is no evidence of negligence that one lump of coal should happen to land on the ground out of a whole carload. It is hardly possible for the coaler to have thrown the lump directly on the plaintiff, as the coaler was throwing into the front of the long tender and the plaintiff was at the extreme rear end, and at an angle of nearly forty-five degrees from the coaler. It is hardly possible for a man of average strength to throw a hundred pound lump the distance with sufficient force to make it ricochet from the front of the tender to its rear. Therefore, those theories are worth but little. They are highly improbable, much less probable. From all the circumstances in evidence, considering especially the plaintiff's position at the very rear end of the tender, there are two rational theories by which the accident can be accounted for and both are inconsistent with any charge of culpable negligence. One theory is that the coaler threw the lump on top of the coal pile in the tender and that it failed to find lodgment and rolled off the rear end. This is consistent with the plaintiff's "information," namely, that the lump struck the tender and "fell off." I am unable to

find in the record a scintilla of evidence that the lump struck "outside and below the rail." From the use of the words "fell off" one would naturally infer the coal landed on the tender's coal pile and rolled off. If so, that is no evidence of negligence. The other theory is that the coaler threw a lump which accidentally struck another lump, which, being dislodged, rolled off the rear end of the tender on the plaintiff. If so, this would be no evidence of negligence. It is contended "that if the coalers threw the coal in the first instance back on the water tank where it was likely to roll off it would be an act of negligence." There is no evidence of this, and the probability is entirely against the theory, because the coalers were opposite the front end of the tender, nearest the coal bin, and at a considerable angle from the water tank. The distance was so short between the car and the tender that they could hardly have thrown the coal so far sideways. It is further said, "if the coalers continued to pile coal on the forward part of the tender, where it belonged, until it was even with or above the top of the tender so that the coal was likely to roll off, etc., it would be negligence to do this without warning plaintiff." In the first place one may search the record with closest scrutiny and not find a suggestion of evidence to support such hypothesis. If it had been true, the plaintiff doubtless would have made it known. In the second place the coalers, according to the plaintiff's own statement, did not know where the plaintiff was, and, as I have undertaken to show, it was not their duty to know, engaged as they were under his control in most engrossing work. In the third place, it was the coalers' duty to continue to throw coal and load the tender until plaintiff ordered them to stop. It was for the boss, not the men, to say when the job was completed, as he was responsible for its proper performance. Of course all these theories are purely speculative conjectures, and that is all there is in the plaintiff's case. I have discussed them with a view to showing that in

the domain of probabilities the preponderance is largely with, instead of against, defendant's contention, that there is no sufficient evidence of negligence. As a last resort, the rule which an eminent lawyer recently called "the overworked doctrine of *res ipsa loquitur*" is invoked to help out, if possible, the plaintiff's feeble case. Mr. Wigmore, in his valuable work, says that the rule has spread rapidly in the United States, "although with much looseness of phrase and indefiniteness of scope." "What its final accepted shape will be can hardly be predicted. But the following consideration ought to limit it." One who reads those considerations will conclude that the learned author would be amazed to know the rule could be applied in a case like this, where the origin of the injury is involved in so much doubt. Wigmore on Evidence, vol. 4, sec. 2509. If there is nothing in the way of substantive evidence to take this case to the jury, and it is to go there solely upon the principle of *res ipsa loquitur,* then the court is giving to the rule the force and effect of a presumption of a *prima facie* case. This is contrary to *Womble's case* and *Stewart's case* in our own reports. The mere fact of an accident has never yet been held sufficient to impose a liability for negligence. There must be something in the circumstances surrounding the case to take the case out of this rule before "the facts can speak for themselves." As is said in *Toomey v. Steel Works:* "This is founded in reason and common sense." 89 Mich., 249. It is held in many cases that as between master and servant the mere fact that the servant is injured while in his employ is not *prima facie* negligence and is no evidence of negligence. *R. R. v. Houck,* 77 Ill., 287; *Kuhns v. R. R.,* 70 Iowa, 561; *Elevator Co. v. Neal,* 65 Md., 438, and cases cited in these opinions. In the case of *Steel Co. v. Shields,* 146 Ill., 607, the plaintiff was injured by the falling of a mould on him. The court says: "In an action of this character it is necessary to aver and prove negligence on the part of the defendant, and if the

record disclosed the fact that the plaintiff merely proved the falling of the mould and the injury the judgment could not be sustained." In the case at bar nothing has been proved except that a lump of coal fell on the plaintiff at a place eight feet distant, and to the side of where the coalers were at work. What caused it to fall is pure conjecture. I say with deference it is a dangerous and unwarranted extension of the rule, *res ipsa loquitur,* to apply it under such circumstances. This court did not apply it in *Carter's case,* 129 N. C., 203, or in *Raiford's case,* 130 N. C., 597, both much stronger cases than this for its application. There seems to be sometimes a difference in the application of the rule in favor of a passenger or stranger and where the relation of employer and employee exists. The Supreme Court of Massachusetts says in this connection: "No general rule can be laid down, that the mere occurrence of an accident is or is not sufficient proof of an actionable negligence; for each case must depend upon its own circumstances; and what would be sufficient proof of such negligence in an action brought against a railway company by a passenger, or by a stranger, might not be so in an action brought by one of its servants." The authorities cited in behalf of the application of the rule in a case like this do not sustain the contention. Shearman & Redfield, sec. 59, apply the rule only to cases where "the surrounding circumstances contain *without further proof* sufficient evidence of defendant's duty and of his neglect to perform it." Mr. Labatt, sec. 843, says: "Its essential import is that on the facts proved the plaintiff has made out a *prima facie* case without direct proof of negligence." In all the cases cited on behalf of the plaintiff the evidence established a direct juridical connection between the injury and the originating cause which set in motion that which caused the injury, as in the case of the coal dropping from a cranky bucket, or from the tender of a flying train, or the falling of the cross tie from a passing car. But in this case there is

FITZGERALD *v.* RAILROAD.

no evidence as to what started the movement of the lump of coal which fell on the plaintiff, as there is not one shred of evidence to show that it was thrown on the plaintiff by the coalers. There is no suggestion that the coalers threw the lump on the plaintiff purposely, and I think I have shown from the position of the plaintiff it could not well have been done accidentally. *Howser v. Railroad,* 80 Md., 154, is cited as an authority for the plaintiff. An examination of the facts in that case show that they are not at all similar to this case and that the case is worth but little in support of the plaintiff's contentions. But if it were an analogous case as to facts, it is greatly weakened as an authority by the very forcible dissenting opinion of *Judge McSherry,* concurred in by another member of the court.

In conclusion it can be justly said that taking all the facts in this case, of which there is any substantive evidence, and putting them together, they do not tend to prove a single definite act of negligence, or neglect of duty, upon the part of the defendant's servants, the two coalers. The language of *Adams, J.,* in *Allen v. Banks,* 39 N. Y. Sup., 1017, is to my mind peculiarly applicable. "This case was tried upon the theory that it was only necessary to prove the occurrence of the accident, and its physical consequences to the plaintiff in order to establish a cause of action against the defendant: It is singularly destitute of any evidence which will furnish a satisfactory explanation of the particular cause which produced the injury complained of."