R. B. TURNER v. SOUTHERN POWER COMPANY AND CATAWBA POWER COMPANY.

(Filed 20 December, 1910.)

1. Electricity—Furnishing Lights—Public Service—Duty.

A contract entered into by an electric power company to furnish electricity for a given number of lights or for a given amount of power must be construed and determined according to the general principles of the contract as to the amount of power or light to be supplied, and the obligations assumed by the company under the contract are, as a rule, absolute; but the duties incumbent on the vendor company, by reason of the dangerous nature of electricity and as to the methods and appliances for its proper use and delivery, in the absence of specific stipulations concerning them, are to be considered as arising, in part, from the position the parties have assumed towards each other, and to be determined under the general principles of the law of negligence.

2. Same—Public Service—Corporations—Negligence—Stipulations.

A corporation engaged in furnishing electric power and lights to its patrons in the exercise of chartered rights and privileges conferred by the lawmaking power, in part for the public benefit, are *quasi*-public corporations, and may not stipulate against their own negligence or transfer the obligations incumbent upon them, in the absence of legislative authority to do so.

3. Electricity — Furnishing Lights — Public-service Corporations—Dangerous Instrumentalities—Care Required.

While the law does not regard a *quasi*-public corporation, furnishing electric power and light to its patrons, as insurers against

injury arising to them from its use, it owes to them the duty to protect them by exercising the highest skill, the most consummate care and caution and utmost diligence and foresight in the construction, maintenance, and inspection of its plant and appliances obtainable, consistent with the practical operation of the plant.

### 4. Negligence—Evidence—Res Ipsa Loquitur.

When a thing which causes injury is shown to be under the management of defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from a want of care.

### 5. Same—Burden of the Issue—Questions for Jury.

Where the doctrine of *res ipsa loquitur* applies, the question of a defendant's responsibility must be referred to the jury, not under any presumption changing the burden of the issue, but as presenting a cause in which evidence has been offered from which negligence on the part of the defendant may be inferred.

### 6. Same.

Where the application of the doctrine in question is properly called for, its effect and operation are not displaced or removed because there is testimony offered which if accepted by the jury would exonerate the defendant, for in such case the credibility of the evidence relevant to the inquiry is for the jury. They may accept or reject it.

### 7. Same—Electricity—Nonsuit.

Where it appeared that plaintiff on entering his store in the early evening took hold of the electric lamp suspended from the ceiling by a cord, to turn on the light in the ordinary and usual way and in the same manner he had been accustomed to do without injury for a year or more, and under like conditions, and received an electric shock causing serious physical injury; and it further appeared that the amount of voltage stipulated for in the contract between the parties is not likely to produce any harmful results if proper care is observed in its transmission; and further, that all the appliances within the building, which were in the care and control of other persons, were at the time in good order, and the question of defendant's responsibility was confined to the operation and conditions of the appliances and wires used in conveying the electricity into the building, and which were in the exclusive care and control of the defendant: *Held,* the doctrine of *res ipsa loquitur* applies, and the trial court properly refused to nonsuit plaintiff on the alleged ground that there was an entire lack of testimony to sustain plaintiff's cause of action.

Appeal from *E. B. Jones, J.,* at January Term, 1910, of Mecklenburg.

Civil action to recover damages for injury caused by alleged negligence on the part of defendants. It was shown, at the trial, that on 25 December, 1908, plaintiff entered his store at some time in the early evening to make a sale to some one, and as he caught hold of the electric lamp, suspended from the ceiling by a cord, to turn on the light in the ordinary and usual way, his hand was caught and held by the current, rendering him, for a time, unconscious, severely burning his hand and causing permanent injury to same. That the electricity was conveyed to the building by defendant companies, under a contract to furnish same for a given number of lamps, at the ordinary voltage, stated to be, for that purpose, 110 volts, and that the appliances within the building for distributing the light to the different lamps was supplied by a different company, acting independently of defendants, except the bulb for this particular lamp, which had been bought from defendants a short time before. There was evidence, on the part of plaintiff, tending to show that the appliances, within the building, procured from other persons, were examined by an expert the day after the injury and found to be in good shape, and that on the position of plaintiff, when injured, and under conditions in the building which then and usually obtained, the amount of electricity and at the voltage contracted for, would not produce the effects which were shown to have resulted. That plaintiff took hold of bulb, in this instance, as he had been accustomed to do since the light had been installed, and same had never caused any bad effects before or given indications that anything was wrong.

There was evidence, on the part of the defendant, tending to show that they have supplied electricity under the contract, to the amount and voltage stated, and conveyed the same to the building as claimed; that they had installed a meter and switch, with the appliances required for properly protecting the house; that no official report of the occurrence had been made directly to the office, but that, having noted an account of it in the morning paper, the appliances referred to for supplying the

electricity were examined and tested by their experts on the afternoon of the day succeeding the occurrence, and their appliances, the ampere plugs, etc., for controlling the volume and voltage showed to be in good order, and also the charts connected with the transformer gave indication that the proper amount of electricity had been distributed, etc.

Speaking to this particular implement and its use and purposes and the evidence afforded by these charts, W. W. Hanks, a witness for defendant, testified: "These are registered on an automatic instrument that shows, in order to get an excessive voltage at the point Mr. Turner came in contact with it, it would have to be in contact with some other source of higher voltage. The system was all right, and it would have to be from some foreign wire or from a primary wire not on the system."

There was, further, some evidence offered by defendant to the effect that at a point near where this particular light was suspended from the ceiling the floor had been saturated with the brine from a pile of meat, and that by standing on that point the voltage at 110 might be accelerated or increased so as to import danger to one handling an exposed wire supplying electricity for the lamp, etc.

The cause was tried on the ordinary issues as for negligent injury, and responsibility of defendants was determined under the principles applicable to demands of that nature. The court imposed throughout on plaintiff the burden of the issue as to defendants' negligence, and under several prayers for instructions offered by defendants he charged the jury that if the injury was caused by reason of defective socket or other appliances in the building, the defendants would not be liable, and in effect excluded every cause or feature of responsibility except that which might arise from an excess of voltage negligently conveyed or allowed to enter into the building by reason of the defective appliances of defendants. On the standard of care the court charged the jury, among other things: "That while the law does not regard an electric light company an insurer against injury, such a company owes to its patrons the duty to protect them from injury, by exercising the highest skill,

most consummate care and caution, and the utmost diligence and foresight in the construction, maintenance, and inspection of its plant and appliances obtainable, consistent with the practical operation of its plant. So it is something more, under the law, as the court understands it, than ordinary care; it is the highest care."

Verdict and judgment for plaintiff, and defendant excepted and appealed.

*Burwell & Cansler and R. S. Hutchison for plaintiff.*
*Osborne, Lucas & Cocke for defendant.*

HOKE, J., after stating the case: We are of opinion that this cause has been tried on correct principles and that no reversible error appears of record. Where an electric light and power company, operating under a *quasi*-public charter, enters into an ordinary contract to furnish electricity for a given number of lights or for a given amount of power, the obligation as to the amount of power or light to be supplied must be construed and determined according to the general principles of contract, which, as a rule, are absolute; but, in reference to the duties incumbent on the vendor or company, by reason of the dangerous nature of electricity and as to the methods and appliances for its proper use and delivery, these, in the absence of specific stipulations concerning them, should be considered as arising, in part, from the position the parties have assumed towards each other, and to be determined under the general principles of the law of negligence. A distinction illustrated and applied in the recent case of *Dail v. Taylor,* 151 N. C., p. 284, a case in which liability was established by reason of a breach of a legal duty on the part of the defendant, incident to the contract relations between them, and "not contained within its express terms and stipulations." And where the principle applies they may also be said to rest upon the obligation that every *quasi*-public corporation is under to perform its duties properly when they have dedicated their property to a public use and are in the exercise of chartered rights and privileges, conferred by the lawmaking power, in part for the

public benefit. From this it would seem to follow that such companies would not be at liberty to stipulate against negligence, nor to transfer the obligations incumbent upon them, without legislative sanction. The case has been tried substantially according to the principles indicated, and the degree of care obtaining in such cases has been correctly stated in the charge. Owing to the very dangerous nature of electricity and the serious and often fatal consequences of negligent default in its control and use, the law imposes a very high degree of care upon companies who manufacture and furnish it, and the exacting requirements laid down by his Honor below is in accord with well-considered authorities in this and other jurisdictions. "The utmost degree of care" was the language adopted and approved in *Haynes v. Gas Co.*, 114 N. C., pp. 203-211. Said *Burwell, J.*, delivering the opinion: "The danger is great, and the care and watchfulness must be commensurate with it." In *Electric Co. v. Lawrence*, 31 Col., p. 308, it was held: "While a corporation furnishing electric light to others for private gain may not be regarded as an insurer, it owes its patrons the duty to protect them from injury by exercising the highest skill, most consummate care and caution, and utmost diligence and foresight in the construction, maintenance, and inspection of its plant and appliances which is attainable, consistent with the practical operation of its plant." And in *Brice v. Wheeling Electric Co.*, 62 W. Va., 685, it was held that "Electrical companies are required to exercise the highest degree of care in reference to the condition, maintenance, and inspection of their wires and appliances."

In approving these formulas as to the degree of care required in such cases, the Court does not intend to hold that there is a varying standard of duty in this State by which responsibility for negligence is determined. Speaking to a similar question in *Fitzgerald v. R. R.*, 141 N. C., 536, the Court said: "They were, therefore, charged with a high degree of care in this respect. This statement imports no infringement on the doctrine which obtains with us, that there are no degrees of care so far as fixing responsibility for negligence is concerned. This is true on a given state of facts and in the same

case. The standard is always that care which a prudent man should use under like circumstances. What such reasonable care is, however, does vary in different cases and in the presence of different conditions, and the degree of care required of one, whose breach of duty is very likely to result in serious harm, is greater than when the effect of such breach is not near so threatening."

It was earnestly urged for error that the judge below refused to nonsuit the plaintiff, and this chiefly on the ground that there was no direct evidence that electricity had been negligently transmitted into the building by defendants and in excess of the voltage stipulated for in the contract. The court was also asked to charge the jury to the same effect, but the position, in our opinion, cannot be sustained. The presiding judge charged the jury that if the injuries resulted by reason of defective apparatus or appliances existent within the building, they would render their verdict for defendants, and in effect excluded from the consideration of the jury any and all imputation of wrong except that which might arise by reason of an excess of voltage transmitted into the building over the wires of defendants and by reason of negligent default on the part of the company or their agents. This being true, on the facts in evidence, the case permits and calls for an application of the doctrine of *res ipsa loquitur* and requires that the question of defendant's responsibility should be determined by the jury. This doctrine has been discussed and applied in several recent cases before this Court, as in *Dail v. Taylor,* 151 N. C., 284; *Fitzgerald v. R. R.,* 141 N. C., 530; *Ross v. Cotton Mills,* 140 N. C., 115; *Stewart v. Carpet Co.,* 138 N. C., 66; *Womble v. Grocery Co.,* 135 N. C., 474; and in general terms will be found very well stated in the fifth headnote to *Fitzgerald's case, supra,* as follows: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." And this statement will be found in accord

with well-considered cases in other courts, as in *Griffin v. Manice,* 166 N. Y., 188; *Hawser v. R. R.,* 80 Md., 146; *Sheridan v. Foley,* 58 N. J. L., 230; *Armour v. Golkouska,* 95 Ill. App., 492.

These and numerous other authorities on the subject will disclose that it is not the injury alone that can call for the application of this doctrine or maxim, but the injury and the facts and the circumstances immediately attending it and constituting together the occurrence or event which present the conditions when it may be properly allowed to prevail. Thus in Shearman and Redfield on Negligence, sec. 59, the authors say: "In many cases the maxim *res ipsa loquitur* applies; the affair speaks for itself. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury, but in these cases the surrounding circumstances which are necessarily brought into view, by showing how the accident occurred, contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer." As shown in the note to *Fitzgerald's case,* in 6 L. R. A. (N. S.), pp. 361 and 363 (141 N. C., 530), the term *res ipsa loquitur* has been sometimes inaccurately applied to cases where, in addition to facts and attendant circumstances, more or less objective in their nature and sufficient to indicate that negligent default is the more reasonable probability (*Dail v. Taylor, supra*), there is testimony *ultra* tending to indicate personal agency in producing the result complained of, presenting rather an ordinary case of proof by circumstantial evidence. But the doctrine in strictness applies when the injury and the facts immediately attendant being otherwise sufficient, this direct evidence of personal responsibility is lacking; and this, we think, is the case presented here.

Under the facts submitted for the consideration of the jury and as accepted by them, all the means, implements, appliances for the generation, transmission, and delivery of this fluid, "this manifestation of kinetic energy," as a very intelligent expert termed it in answer to an inquiry by the writer,

were under the control and management of defendants and their agents. Under these circumstances the plaintiff takes hold of a lamp to turn on the light in the same manner he has been accustomed to do without injury for a year or more and under like conditions, and receives an electric shock causing serious injury; and it is established, furthermore, that the amount of voltage stipulated for in the contract—even more than that— is not likely to produce harmful results if proper care is observed in its transmission. The usual and ordinary evidence in explanation available is in possession of defendants, peculiarly so in a case of this nature; this last condition being referred to by *Connor, J.,* in *Womble v. Grocery Co., supra,* as the basis of the maxim, and in such case as stated the question of defendant's responsibility must be referred to the jury—not, as shown by these authorities cited, under any presumption changing the burden of the issue, but as a cause in which evidence has been offered, from which negligence on the part of the defendant may be inferred. Speaking to this special feature of the doctrine in *Womble's case,* it is said: "The principle of *res ipsa loquitur* in such cases carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, and not, we think, raising any presumption in her favor, but simply entitling the jury, in view of all the circumstances and conditions, as shown by plaintiff's evidence, to infer negligence and say whether, upon all the evidence, the plaintiff has sustained his allegation." Where the application of the doctrine we are discussing is properly called for, its effect and operation are not displaced or removed because there is testimony offered which if accepted by the jury would exonerate the defendant, for in all such cases the credibility of the evidence relevant to the inquiry is for the jury—they may accept or reject it. Undoubtedly, and having in view the high degree of care required in causes of this character, if it should be shown that a defendant has taken all reasonable precaution and used all the regulating and preventive appliances obtainable and recognized as practicable, and notwithstanding this the injury has occurred, in such case the defendants should be exonerated. There may be cases where the explanation offered in evidence is so full

and satisfactory that a court would be justified in charging the jury, "If they believe the evidence, the defendants are entitled to their verdict." It is recognized that this is a dangerous agent, whose properties are not as yet fully known or understood, and from what is known, it appears that at times an amount and voltage of electricity which is ordinarily and reasonably treated as harmless may cause serious and even fatal results either from some condition of the injured person or other adventitious cause, which defendant may not be able either to foresee or prevent; and, therefore, when a company shows to a jury, by testimony which they accept as worthy of credence, that it has done all that the highest degree of care could reasonably require in reference to the "condition, maintenance, and inspection of their wires and appliances," they should render a verdict relieving defendant of liability. But on the facts presented in this case, and for the reasons stated, the court properly refused to nonsuit the plaintiff or to hold, as requested, that there was no evidence of negligent default. The objection made to allowing an amendment in the midst of the trial, charging negligence by reason of a defective bulb bought of one of the defendants, and the evidence tending to support it, has become immaterial in view of the charge relieving defendants from any and all imputation of negligence on that account. There is no error, and the judgment entered below is affirmed.

No error.