EMMA RENCHER v. JAMES C. WYNNE.

*Judge's Charge—Fraud—Married Woman—Notice.*

1. A judge need not give instructions in the very words asked, even when correct in law ; certainly not if in any particular erroneous. But he shall declare the law as applicable to the facts in proof, and any reasonable inference from them.

2. He should declare what constitutes a fraudulent intent in law vitiating and annulling, as against creditors, an accompanying assignment

otherwise effectual; and what knowledge prevents the assignee from deriving title thereunder, especially if the denial of such knowledge is only as to the fraudulent purpose of the assignor and not as to his acts and objects, which were material for the jury to consider in fixing the extent of the assignee's notice of the fraudulent intent.

3. Although a loan, with an agreement to be secured if the debtor finds himself failing, may be upheld, however suspicious the transaction, yet if there be the further and principal purpose to give the debtor false credit, and induce a creditor to rely upon it for payment, a conveyance effecting such understanding which hinders and defeats the creditor, will be inoperative and void.

4. As a wife now has legal capacity to contract with her husband, make loans to him, and take security therefor, she will not be supposed in such matters to act under the marital influence, but will be affected by the rules applicable to other persons.

(*Leadman* v. *Harris*, 3 Dev. 144; *Cheatham* v. *Hawkins*, 80 N. C., 161, cited and approved.)

CIVIL ACTION removed from Franklin County and tried at Spring Term, 1880, of WARREN Superior Court, before *Gudger, J.*

The plaintiff is the wife of D. W. Rencher to whom she was married in 1866, and brings this action to recover in damages the value of the property described in the complaint, (carriage, horses, mules and other stock, farming implements, &c.,) and sold by the defendant sheriff of Franklin county, under execution against her husband.

Verdict and judgment in favor of the plaintiff, appeal by defendant.

*Messrs. Merrimon & Fuller*, for plaintiff.
*Messrs. Gilliam & Gatling*, for defendant.

SMITH, C. J. The defendant, sheriff, under an execution issued against D. W. Rencher seized and sold for its satisfaction the several articles of personal property described in the complaint and for the recovery of the value of which the action is brought.

The plaintiff derives her title under a deed from the said Rencher, her husband, to her executed on November 11th, 1874, and proved and registered a few days thereafter ; and the controversy is as to the *bona fides* and legal sufficiency of the conveyance against the creditors who had sued out the process, under whose authority the defendant acted in taking and appropriating the property to their demand.

The issues submitted to the jury and their finding upon the question of fraud were in these words :

1. Was the deed from D. W. Rencher to his wife, Emma Rencher, dated the 11th day of November, 1874, executed for the purpose and with intent to delay, hinder and defraud the creditors of D. W. Rencher ?   Yes.

2. If so, did the plaintiff have knowledge of such purpose and intent ?   No.

It was shown at the trial that D. W. Rencher who with his wife after their marriage in 1866, removed from Alabama and became residents of Franklin county in this state on January 1st, 1870, bought at the price of $1500 and paid for out of his own means a house and lot in Franklinton, and caused the same to be conveyed to the plaintiff. He was not then in debt.   With the plaintiff's consent, he rented out the premises, took notes for the rent in his own name, and managed the property as his own, and such it was understood in the community to be, the deed not having been registered until December 11th, 1874.

The lot was sold in the latter part of 1872, for $1200, and both joined in the deed to the purchaser.   This money with her knowledge and consent was used in payment for a plantation bought by him, situated near the town, and the title thereto taken in his own name.

At the same time he promised the plaintiff to secure the amount thus appropriated, if he should become involved in debt.   During the intervening period between the marriage and the impeached assignment, the mother of D. W.

Rencher sent to the plaintiff at different times sums of money in the aggregate $600, which was loaned to him, and this sum and the proceeds of sale of the town lot constitute the consideration of the assignment. The debts reduced to judgment, and on which issued the execution by virtue of which the goods were taken and sold, which are claimed by the plaintiff, were contracted with the firm of J. S. & W. H. Joyner during the years 1873 and 1874. There was no evidence that any persons in the county, except the plaintiff and her husband, were acquainted with the fact that the conveyance of the title to the town lot had been made to the plaintiff, the bargainors residing in the city of Baltimore and the deed having been there executed, or that Rencher was indebted in any manner to his wife.

The plaintiff examined on her own behalf testified that the assignment was truly and honestly made, and accepted on her part in discharge of his indebtedness to her, in the sum recited as its consideration, and that in the entire transaction she acted in good faith and without knowledge of any fraudulent purpose in the assignor or any one else.

The defendant requested that these instructions be given to the jury:

1. If the deed from Rencher to the plaintiff (his wife) was made with intent to hinder, defraud and delay creditors, and the plaintiff permitted him to use the property with an agreement, known to themselves only, that he should secure the debt due her in the event he should become embarrassed, then she is affected with notice and the deed is void.

2. That if the plaintiff permitted her husband to use her property as his own, with the agreement known to themselves alone, that if he should become involved or embarrassed he would secure her, and the deed was in pursuance of the agreement, then it was fraudulent as against his then subsisting creditors.

The court refused so to charge, and told the jury that "if

the deed to the plaintiff was voluntary, without a valuable consideration, with the corrupt intent to delay, hinder or defraud creditors, it is void; but if made as an absolute conveyance and for a valuable consideration to the plaintiff, it. would be good notwithstanding his fraudulent purpose, if she was not a party to such fraud and bought in good faith without knowledge of his corrupt intent."

The exceptions needful to be considered grow out of the refusal to charge in the manner requested, or to give any directions as to what constitutes a criminal complicity on the part of the assignee in the fraud, or knowledge of the fraud practiced by the assignor, which enters into and infects the legal validity of the instrument through which it is attempted to be made successful.

In this we think there is error, and that the law, bearing upon the facts, as the jury might find them upon the evidence, not properly and sufficiently explained to guide them in making up their verdict. While the judge is not required to give an instruction in the very words in which it is prayed, even when correct in law, and certainly not when in any particular erroneous, yet it is to be expected that he shall declare the law as applicable to the facts in proof, and any reasonable inferences which may be drawn from them in order to an intelligent and rightful determination of the issues before the jury. He should tell them what constitutes the fraudulent intent meant in the law, which accompanying an assignment, otherwise effectual, vitiates and annuls the instrument as a conveyance operating against creditors, and leaves the property still liable to their action.

He should also have explained to them what knowledge or information possessed by the assignee would prevent her from deriving a title under a deed fraudulently made by the assignor; more especially was this explanation needed in view of the plaintiff's denial, not of knowledge of the meditated acts and objects of her husband, but " of any

fraudulent purpose in him" which might easily be misin-
terpreted as meaning to deny that his purpose, though un-
derstood, was fraudulent.   The plaintiff might suppose there
was nothing wrong in retaining and trading upon the credit
of the property, as long as the business was prosperous, and
yet with an executory (as efficient in its consequences as if
executed) agreement by which practically it is rendered in-
accessible to the demands of creditors, contracting upon the
faith of the debtor's ownership, and who are thus misled
and deceived.   If the arrangement was entered into with
the concurrence of both, that the husband should retain the
legal title and possession as a basis of future or continuing
credit in the conduct of his business, but that upon the ap-
proach of insolvency it should be transferred to her, and
thereby be placed beyond the reach of those to whom he
might meanwhile become indebted, this fraudulent intent,
understood by both, and entering into and consummated
by the deed, would defeat its operation, notwithstanding the
debt paid or secured was truly due and owing.

We do not say that a loan with an agreement that it shall
be secured when the debtor finds himself in failing circum-
stances, is not valid and effectual; with no other ingredient
in the intent, it would, we think, be upheld, however sus-
picious the transaction may appear.   But if in association
with that is the further and principal purpose to enable the
debtor to obtain a false credit and to hold out to the cred-
itor this, as among the resources of the debtor, upon which
he can and does rely for payment of the incurred liability,
the conveyance in pursuance of such understanding which
does hinder and defeat the creditor, if allowed to stand,
must be deemed as to him inoperative and void.

"It is true," remarks the eminent judge who for so many
years presided in this court, "that when the debt is a just
one, the covinous intent is difficult of proof, and can seldom
be proved, because, *prima facie*, a just debt makes the deed

*bona fide.* Nevertheless, when the intent (before described as fraudulent) can be reached, it is not the less fraudulent because it assumes a more specious appearance." *Leadman* v. *Harris*, 3 Dev., 144.

The verdict of the jury fixes the fraudulent purpose in the maker of the deed, and it became therefore material to inquire if these acts and that conduct attending the execution of the deed, from which his intent is deduced, were not equally within the plaintiff's knowledge, and from which she might and ought to have drawn the same inferences as the jury. That which naturally and necessarily follows an act intentionally done, must be deemed to have been intended when the act was done. " A party cannot be heard to say he did not intend the necessary consequences of his own voluntary act." *Babcock* v. *Eckler*, 24 N. Y., 623.

And so a complicity in or assent to a deed which undertakes to convey a beneficial interest to another, and is fraudulent in fact, is implied in the knowledge of those acts and purposes in which the fraud consists, and takes away all claim to its benefits as against unsatisfied creditors.

The validity of the assignment is not to be determined by the declared motive of the plaintiff in accepting, but upon her knowledge of the facts which render it a fraud in the assignor to make it. *If his unlawful purpose* was brought to her notice, and the making the deed, its result, assented to, she is a participant in the fraud and derives no title under it to the prejudice of his creditors. "If the motive to be ascertained, not from the act itself and its results, but from the subsequent declarations of the parties to the transaction, is to be the test of the validity of conveyances, they would depend, not upon the clear and well settled principles of law, but upon the capricious and uncertain temper of individual persons." *Cheatham* v. *Hawkins*, 80 N. C., 161.

The case seems not to have been presented in the charge upon the material point to which the attention of the judge

was called in the proposed instructions, in such a manner as to enable them to comprehend the bearing and effect of the evidence, and the correct legal principles upon which rests the assignment as an effective and unassailable transfer of the property to the plaintiff. The charge is not in substance that which was asked, nor does it attempt to impart the information upon matters of law, which the jury ought to have had to aid them in their findings; and in consequence, the issues should be submitted to another jury.

It is suggested that the plaintiff, being the wife of the assignor, is not free from his supposed material influence, and ought not to be affected by the same rules which would govern in deciding upon a transaction between independent persons. But if the wife has legal capacity to contract with her husband, make loans to him, and take security for repayment, she must act in subordination to the general law as well as others. A fraudulent conveyance to her, with her assent, can no more be supported and allowed to defeat creditors, than if made to a stranger. She can no more participate in a fraudulent conveyance and seek benefit under it, than can an indifferent person. She may lose her own property by actual fraud, uncoerced. She cannot acquire property from her husband through the instrumentality of his fraud, known to herself, to the injury of his creditors.

There must be a new trial. Let this be certified.

Error.                                                  *Venire de novo.*