B. R. HOUSTON, ADMINISTRATOR, *v.* DURHAM TRACTION COMPANY.

(Filed 19 April, 1911.)

**Electricity—Negligence—Evidence—Questions for Jury.**

> Evidence of the death of plaintiff's intestate by the negligence of the defendant in permitting an excessive voltage of electricity upon the wires where the intestate was employed to work by contractors repairing the building, and a defect in the mechanism of an electric socket for a lamp, *held* sufficient, in connection with other circumstantial evidence, to take the case to the jury.

CLARK, C. J., delivering the opinion; ALLEN, J., concurring therein; HOKE, J., concurring in the result; BROWN and WALKER, JJ., dissenting.

APPEAL from *W. J. Adams, J.,* at the March Term, 1910, of DURHAM.

The facts are sufficiently stated in the opinion of *Mr. Chief Justice Clark.*

*Bramham & Brawley and Guthrie & Guthrie for plaintiff.*
*Foushee & Foushee and Bryant & Brogden for defendants.*

CLARK, C. J. This is a petition to rehear this case, which was affirmed by an evenly divided Court, at this term.

Plaintiff's intestate was a young man nineteen years of age working as a hand for contractors in the basement of a store which was being repaired by them for the owner in consequence of damages from fire. On the application of the contractors, the defendant traction company supplied them with three incan-

descent lights swinging on cords forty or fifty feet in length so as to enable the workmen to move the lights from place to place as occasion required, in order to see how to perform their duties. The electric current and the bulbs and cords were furnished by the defendant.

The plaintiff's intestate was killed on Monday, 21 December. A new basement floor of cement had been put down on Thursday, 18 December, three days before his death. At the time of his death this basement floor had not thoroughly dried out, and water was standing on it in some places, and it was damp all over. He was standing on this floor at the time of his death. There were no obstructions on the floor which could have caused him to fall. His tool-box was in a corner of the room, and in going to the tool-box the intestate had to pass the light under which his body was found. It was necessary for him to get some of these tools to perform his work, and he could not have seen how to get his tools without moving the light and carrying it with him. He had just resumed his work after dinner, and handing a step-ladder to his brother, who was also working in the building, plaintiff's intestate turned and walked towards his tool-box. Two or three seconds after handing his brother the ladder, his brother saw deceased's body lying directly under the light, and the light was swinging to and fro, hanging directly over him. Intestate did not speak after he fell to the floor. The light, before deceased went to it, was hanging upon the wall, still burning. When his body was discovered lying under it, the light was swinging to and fro. No one had been near it, or could have caused it to swing to and fro, except the intestate. The electric light into which the incandescent glass globe screwed was a brass socket. There was place for two screws in the socket which held the brass cap over the exposed wires in the interior of the socket. One of these brass screws was out of the socket and missing, and the cap on the socket was raised so that the wiring inside the brass socket was pulled up. The wires inside the brass socket were exposed just under the cap, and these wires were touching the sides of the brass cap. The current for these artificial lights, as well as the sockets and cords attached thereto, was furnished by the defendant company. It was an alternating

light, and the voltage in such currents is from 104 to 110 volts. Tests made on the voltage of this light, immediately after the death of plaintiff's intestate, showed that the voltage was between 260 and 280 volts.

It is much more dangerous to stand on a wet floor than to stand on a dry floor when coming in contact with an electric current.

Dr. Graham, a medical expert, in reply to hypothetical questions, gave it as his opinion that the death of plaintiff's intestate was caused "by paralysis of the heart from the electric current." A member of the police force testified that he went to the spot immediately after the death of plaintiff's intestate; that he examined the socket as soon as he got there; found one of the screws loose and the other pulled out, and that he could see the inside of the brass lining.

The intestate was young and in good health.

Upon the above evidence, which must be taken as true, upon a motion to nonsuit, though there was some conflict in regard to some features of it, the motion to nonsuit was properly refused. There was evidence tending to show that the death of plaintiff's intestate was caused by the defective condition of the wires, with which he might have come in contact when he took up the movable light to see how to get his tools. There was no evidence tending to show death from apoplexy or heart disease or any other cause. The matter was properly left to the jury. "If the circumstances be such as to raise more than mere conjecture, the judge cannot pronounce upon their sufficiency to establish the fact, but must leave them to be weighed by the jury, whose exclusive province it is to decide the effect of the testimony," as was said by *Judge Battle, Jordan v. Lassiter,* 51 N. C., 131. To the same effect, *McMillan v. R. R.,* 126 N. C., 725; *Williams v. R. R.,* 140 N. C., 627, and indeed our authorities are uniform.

The deadly current of electricity furnished by the defendant passes through the ether, imperceptible by any of the natural senses of man. In *Mitchell v. Electric Co.,* 129 N. C., 169, the Court said, speaking of this powerful agency which passes unseen, unheard, odorless, and without any warning of its dangerous presence, "In behalf of human life and the safety of

mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition."

In this case the reading of defendant's instruments showed negligence on its part in sending an excessive voltage over its wires. If, directly after the death of the deceased, the socket was in the condition described by the witness, and the voltage was excessive as shown by its own meter, this, taken in connection with the evidence of the expert above quoted and the absence of evidence tending to show any other cause of death, was sufficient to submit the case to the jury. There was evidence that when the ground is wet, as was here the case, the voltage received by the intestate, if it passed through him, was double the voltage of 260 volts, shown by the meter, and was sufficient to cause death. The evidence was sufficient to authorize a finding that the death of the intestate was not the "mere happening of a casualty."

The second assignment of error cannot be sustained. The court charged the jury, "If you find from the evidence that the defendant was employed by Houston & Christian to install lights, to be moved in the building from place to place for the convenience of Houston & Christian and their employees while engaged in repairing the building; that these lights were put in 19 December, and that on 21 December the intestate was in the employ of Houston & Christian, and while in the prosecution of his work and acting in the scope of his authority took hold of the electric appliances so as to enable him better to perform his work, and that upon doing so the current of electricity was transmitted from the appliances to his body and he was thereby killed, this would constitute *prima facie* negligence on the part of the defendant, and it would be incumbent on the defendant to rebut such *prima facie* evidence."

This is not a charge that the burden of the issue was shifted to the defendant, or that there was any presumption of law in plaintiff's favor, but is merely an instruction that if the jury should find that state of facts it was incumbent upon the defendant "to go forward with its proof," in accordance with what was

said by *Mr. Justice Walker* in *Stewart v. Carpet Co.,* 138 N. C., 66; *Cox v. R. R.,* 149 N. C., 117; *Winslow v. Hardwood Co.,* 147 N. C., 275; *Dail v. Taylor,* 151 N. C., 285; *Marcom v. R. R.,* 126 N. C., 200; *Overcash v. Electric Co.,* 144 N. C., 572. In these last two cases the Court said, "When a derailment is shown, a *prima facie* case is made out, and the burden is upon the defendant to show that the injury was occasioned by an accident."

In Sherman & Redfield on Negligence, sec. 58, which is approved in *Dail v. Taylor, supra,* it is said, "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and a resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence to rebut the presumption."

The third error alleged is the failure to give the following prayer: "If you find from the evidence in this case that the wires, lights and socket were in good condition when put in, then the defendant would not be responsible for any defect that might arise from the use or handling of the same by others."

In *Electric Co. v. Letson,* 68 C. C. A., 453, the Court said, "The contention of the company amounts to this: that if the wires were properly installed it cannot be held responsible for their being out of repair, unless it is proved that they got out of repair through its own fault. But this loses sight of the duty of the company not only to make the wires safe at the start, but to keep them so. They must not only be put in order, but kept in order. The obligation is a continuing one. The safety of patrons and the public permits no intermission. Constant oversight and repair are required and must be furnished. Customers who contract for a harmless current to light their houses are entitled to rely upon such inspection and repairs as will effectually guard them against a dangerous current. They cannot guard themselves. Any attempt to do so would expose them to immediate peril. They must take and use the current on trust, relying upon the protection of the company. In view of. this, when a deadly current enters a customer's house and kills him, it is not too much to call upon the company to explain the existence of the defect which caused the tragedy.".

In *Light and Power Co. v. Arntson,* 157 Fed., 540, the facts were almost identical with this. A laborer seeking to get his tools in a basement where he was doing some repair work, was killed from a shock caused by an excessive current of electricity, and the verdict and judgment obtained in the United States Circuit Court was affirmed in the Circuit Court of Appeals.

In *Hoboken Co. v. Electric Co.,* 58 Atl., 1082, the Supreme Court of New Jersey, in passing upon the contention, made also in this case, that the employees of the deceased were independent contractors, *held,* "An electric company, before sending its cur-, rent for lighting purposes through the apparatus installed in a building by other parties, is bound on its own responsibility to make reasonable inspection of the apparatus to see whether it is fit for use." In *Electric Co. v. Lawrence,* 31 Col., 301, the decision is to the same effect.

The fourth assignment of error is the refusal of the court to submit a fourth issue as to contributory negligence. It has been repeatedly held that this Court will not sustain an objection to the issues if they are such that every phase of the contentions of the parties can be submitted to the jury. *Humphrey v. Church,* 109 N. C., 132, and cases there cited. Besides, if the intestate was killed by the excessive voltage caused by the negligent condition of the apparatus furnished him, which is the finding of the jury, there was no evidence tending to show contributory negligence on his part.

The fifth exception, for permitting plaintiff to introduce certain rules and regulations in evidence, was harmless as the court in its charge withdrew the evidence of the rules from the consideration of the jury. *Wilson v. Mfg. Co.,* 120 N. C., 94, and cases cited thereto in the Annotated edition.

The sixth assignment of error, for permitting the medical expert to answer the questions put to him, cannot be sustained. Every fact embraced in the hypothetical question had been shown in evidence, and it was admitted that Dr. Graham was a medical expert.

The seventh exception was to the evidence as to the socket having been approved by the National Board of Fire Underwriters. This evidence was withdrawn from the jury by the court.

After a careful review of the evidence, the charge, and the exceptions, we find no error.

Petition dismissed.

HOKE, J., concurs in result; WALKER and BROWN, JJ., dissenting.