THOMAS M. HICKS v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 23 December, 1911.)

1. **Master and Servant—Negligence—Electricity—Dangerous Instrumentalities—Presumptions.**

A telegraph company is presumed to know of the danger to its employees in stringing its wires over and in close proximity to the live wires of other companies engaged in supplying electricity for light and power purposes, and are held to the highest degree of care in providing proper appliances for the use of its employees in doing the work that its dangerous character requires.

2. **Same — Proximity — Contact — Safe Appliances—Evidence—Res Ipsa Loquitur—Questions for Jury.**

A telegraph company's employee was engaged, within the scope of his employment, in stringing telegraph wires above and in close proximity to the live wires of another corporation engaged in furnishing electricity for light and power purposes, and there was evidence tending to show that the work was customarily done in

such instances by the use of a rope, and that the employee should have been protected by a guard wire to prevent contact between the telegraph wire and the live wires. The employee in catching hold of the telegraph wire with his bare hand, under the orders of his superior, was killed by an electrical shock caused by the telegraph wire coming in contact with the live wire; and in an action by his administrator for damages: *Held*, the fact of the injury, under the circumstances, was sufficient to carry the case to the jury.

3. Negligence — Electricity — Dangerous Instrumentalities—Fellow-servant—Instructions—Appeal and Error.

When there is evidence tending to show that the plantiff's intestate was killed by the negligence of the defendant in failing to furnish him a proper appliance for stretching its telegraph wires over and in close proximity to heavily charged wires of another company furnishing electricity for light and power purposes, or in providing a guard wire to prevent contact between the telegraph wire he was handling and the live wire of the other corporation, which caused the injury, a modification of a prayer for special instruction upon the application of the doctrine of the liability of the defendant for the negligence of a fellow-servant is not material, when it appears that the trial judge instructed the jury that if the injury was proximately caused by the negligent act of the fellow-servant the plaintiff could not recover.

APPEAL from *Long, J.,* at July Term, 1911, of McDOWELL.

This action was brought to recover damages for the death of plaintiff's intestate, which is alleged to have been caused by the negligence of the defendant. The intestate was employed by the defendant telegraph company as a ground-man, or assistant line-man, and on the day he was killed was at work for the defendant in a squad of men who were engaged in stringing wires in the town of Marion, along the right of way of the Southern Railway Company, the defendant being represented there, at the time, by W. K. McClaren, its general superintendent, and R. R. Robinson, foreman of the construction gang, of which plaintiff's intestate was a member. The said railway passes under a bridge which is a part of the main street of said town. The street runs north and south and the railway east and west. The Marion Light and Power Company, which was engaged in furnishing power and light for the citizens of the town, had strung its wires on poles over the wires of the telegraph company, along

the street and across the bridge and at right angles to the wires
of the said company. The wires of the power company carried
about 2,300 volts of electricity, and they were in plain view of.
everybody in the vicinity. On the day in question, McClaren
and Robinson, with certain employees of the company, were
engaged in stringing wires above those of the power company,
Robinson being in charge of a portion of the squad. He was
stationed on the bridge, where he gave directions to the men
under him as to how to place the wires, which were in imme-
diate proximity to the power company wires. McClaren was
below, to the east of the bridge, under the cut, and not in sight
of Robinson. McClaren had a part of the squad with him and
under his direction, among whom was plaintiff's intestate.
McClaren ordered the intestate to take hold of one of the wires
with his naked hand, which intestate did in obedience to the
order. He had hold of the wire but a very short time, when
it was allowed to sag and drop upon the wires of the power
company, and thereby the current in those wires was transferred
to the wire held by the plaintiff's intestate and he was killed by
the deadly fluid. There was no request made to the power com-
pany to cut off this current while the work of changing the
wires was going on, nor any guard wires put up for the purpose
of preventing an accident, or any other protection taken to pre-
vent the wire which was being changed from falling on the
heavily charged wires of the power company.

The defendant mainly relied upon the fact that the death of
the plaintiff's intestate was caused by the negligent act of
Asherst, who was a fellow-servant, though it was contended also
that there was no evidence of negligence on the part of defend-
ant company.

The court explained the evidence to the jury and stated the
contentions of the parties, and, among others, the following in-
struction was given to the jury: "If you find from the evidence
that the telegraph company employed the young man Hicks to
work along its telegraph line under the circumstances testified
to by the witnesses, it owed him the duty to exercise reasonable
and ordinary care, such care as a person of prudence would
ordinarily employ with regard to his own business, to prevent

any personal injury to the person transacting such work as was agreed upon between the plaintiff and defendant, and the duty devolved upon young Hicks to use ordinary prudence to avoid danger in connection with any labor which he agreed to perform."

The court then, at the request of the defendant telegraph company, gave the following instructions:

"1. The burden is upon the plaintiff to prove by a preponderance or greater weight of the evidence that the defendant, the Western Union Telegraph Company, was negligent and that such negligence was the proximate cause of the death of the plaintiff's intestate; and if the plaintiff has failed so to prove, or if upon the whole evidence the minds of the jurors are evenly balanced as to whether or not the telegraph company was negligent, or as to whether or not such negligence was the proximate cause of the death of the plaintiff's intestate, then the jury should answer the first issue 'No.'

"2. That the defendant, the Western Union Telegraph Company, would not be liable for any negligence on the part of one of its employees who was a fellow-servant of the plaintiff's intestate; and if the jury shall find from the evidence that the death of the plaintiff's intestate was caused by the negligence of his coemployee, Asherst, this would not be negligence upon the part of the Western Union Telegraph Company, and the jury should answer the first issue 'No.'

"3. If the jury shall find the facts to be as testified to by the witnesses introduced by the Western Union Telegraph Company, the telegraph company was not guilty of negligence, and the jury should answer the first issue 'No.'

"7. Upon the whole evidence, if believed, the plaintiff's intestate, Willard Y. Hicks, and the employee, Asherst, were fellowservants; and if the jury shall find from the evidence that the plaintiff's intestate was killed by reason of Asherst's negligence in permitting the telegraph company's wire to come in contact with the wire of the Marion Light and Power Company, this would not constitute negligence upon the part of the telegraph company, and the jury should answer the first issue 'No.'

"8. If the jury shall find from the evidence that Asherst was instructed to throw the rope over the Light and Power Com-

pany's wire preparatory to stringing another wire, and in disregard or in disobedience of such instruction he attached the rope to the wire which was being taken down, and pulled the wire so that it came in contact with the wire of the Light and Power Company, and this act on the part of Asherst was the proximate cause of the death of the plaintiff's intestate, the telegraph company was not negligent, and would not be liable for the negligence of Asherst, and the jury should answer the first issue 'No.' Given with this modification: Provided you find the method he was instructed to employ by his superior was reasonably safe under the circumstances.

"9. If the jury shall find from the evidence that Hicks was told by the superintendent, McClaren, to take hold of the wire and hold it, this would not constitute negligence, unless McClaren knew or could have reasonably anticipated that the wire might come in contact with the light wire and thus produce an injury to Hicks; and if the jury should find from the evidence that after Hicks took hold of the wire, and while he was holding it, Asherst or some other fellow-servant of Hicks pulled the wire against the light wire, or carelessly permitted the wire to come in contact with the light wire, this would not constitute negligence on the part of the telegraph company, and the jury should answer the first issue 'No.'

"10. If the jury shall find from the evidence that it was safe, at the time McClaren told Hicks to take hold of the wire, for Hicks to obey this instruction, and thereafter, in the conduct of the work, some coemployee and fellow-servant of Hicks either pulled the wire against the light wire or negligently permitted it to come in contact with the light wire so that the current passed to the wire Hicks was holding, this act on the part of the coemployee or fellow-servant of Hicks would be regarded as the proximate cause of Hicks' death, and not the original instruction of McClaren to Hicks to take hold of the wire, and the jury should answer the first issue 'No.' "

Under these instructions there was a verdict for the plaintiff, upon which a judgment was entered, and the defendant appealed.

*Hudgins & Watson and A. Hall Johnston for plaintiff.*
*George H. Fearons and A. S. Barnard for defendant.*

WALKER, J., after stating the case: It seems to us that no case could have been more accurately tried, under the rules of law, than this one was by the able and learned judge who presided at the trial in the court below. The charge was full and complete in every respect, and surely there is nothing in it of which the defendant has any just or valid reason to complain. The jury have acquitted the Light and Power Company of any negligence upon evidence supporting the verdict and under instructions free from any error, and it is not necessary that we should consider that part of the case. There was evidence coming from defendant's own witnesses that the wires of that company were regarded as live and dangerous, and work in the proximity of such wires was always conducted with reference to that fact, and it was its legal duty to assume that those wires were dangerous. *Haynes v. Gas Co.,* 114 N. C., 203. There was also evidence that it was the general custom of this telegraph company and of linemen generally, while working in close proximity to the wires of other companies, which are assumed to be live and dangerous, to use a rope in stretching wires when they are likely to come in contact with the wires of other companies, and this is done to prevent the necessity of taking hold of the wires with the naked hand, which would result in injury if the two wires should come in contact with each other. No guard wires were used so as to prevent such contact, nor were any other precautions taken to make the work of the plaintiff's intestate reasonably safe. Under the evidence and the instructions of the court, the jury must necessarily have found that the death of the intestate was not due to any negligence of Asherst, who is alleged to have been a fellow-servant, and who was on the bridge manipulating one of the wires, for the court instructed the jury that, if the negligence of the fellow-servant, Asherst, caused the death of the intestate, they should answer the first issue "No"—that is, that his death was not caused by defendant's negligence, and the jury answered the issue "Yes," and that instruction was without reference to any orders from a superior officer or vice-principal, under which Asherst may have been acting at the time. If Asherst was not negligent—and the jury have so found as a fact—what difference can it make, if the judge did modify the

defendant's eighth prayer for instructions, for it is predicated entirely on the negligence of Asherst, and it is, of course, immaterial whether his negligence, if in fact there was any, consisted in disobeying safe orders or in pulling or dragging the wire negligently and in disregard of them, so that the wire sagged and fell on the live wires of the company, causing a deadly current of electricity to be transmitted to the body of the plaintiff's intestate, which resulted in his death? Let us repeat, and in a more definite manner, that the court, in giving the instruction contained in the defendant's seventh prayer, told the jury that Hicks and Asherst were fellow-servants, and if they found from the evidence that intestate's death was caused by his negligence in handling the wire—that is, any kind of negligence—it could not be imputed to the telegraph company as its negligence, although he was employed by it, and they should answer the first issue "No." It follows logically from their affirmative answer to that issue that the next prayer, which was modified, was immaterial, as it would be vain and idle for the jury to consider whether the company was negligent by reason of any unsafe orders to Asherst, or otherwise, after they had found that Asherst was not negligent at all. Of course, the company could not be made answerable for a negligence that did not exist. Besides, the court expressly told the jury, as we have seen, that if it was Asherst's negligence that caused intestate's death, it would not be the negligence of the company, and they should answer the first issue "No"; so the defendant virtually got the benefit of the instruction it asked for in its eighth prayer, in the instruction given in response to its seventh prayer.

We think that, perhaps, this is a case which calls for the application of the rule laid down in *Turner v. Power Co.,* 154 N. C., 131, as follows: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such that in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. And this statement will be found to be in accord with well-considered cases in other courts, as in *Griffin v. Manice,* 166

N. Y., 188; *Hawser v. R. R.,* 80 Md., 146; *Sheridan v. Foley,* 58 N. J. L., 230; *Armour v. Golkouska,* 95 Ill. App., 492." And again: "These and numerous other authorities on the subject will disclose that it is not the injury alone that can call for the application of this doctrine or maxim, but the injury and the facts and circumstances immediately attending it and constituting together the occurrence or event which present the conditions when it may properly be allowed to prevail. Thus in Shearman and Redfield on Negligence, sec. 59, the authors say: 'In many cases the maxim *res ipsa loquitur* applies; the affair speaks for itself. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury, but in these cases the surrounding circumstances which are necessarily brought into view, by showing how the accident occurred, contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer.' "

But it is not necessary that we should go so far, for his Honor put the case to the jury practically upon the "rule of the prudent man," both as to the conduct of the defendant and of Hicks, and they found that the defendant had not, under the circumstances, exercised ordinary care. Cases showing the measure of duty of those who employ this dangerous agency in their business have been decided by this Court. *Haynes v. Gas Co., supra; Horne v. Power Co.,* 144 N. C., 375; *Harrington v. Wadesboro,* 153 N. C., 437; *Turner v. Power Co., supra.* In the *Haynes case, Justice Burwell,* speaking for the Court, said: "The danger is great, and the care and watchfulness must be commensurate with it."

It appears in this case that the defendant did absolutely nothing to provide for the safety of its servant, who was killed. Our attention has not been called to any precautionary method adopted by it for that purpose. There is no doubt as to what was the duty of the defendant to its servant occupying a position of great danger in performing his work, and there is very little law in the case. It presents substantially and largely a question

of fact, which, under a faultless charge, the jury have found against the defendant. We take this extract from plaintiff's brief, adding that we think it states a correct principle of law: "It may be taken as settled by the overwhelming weight of authority that a company maintaining electric wires carrying a high voltage of electricity, is fixed with the duty of using all necessary care and prudence to make the wires safe at places where others might have the right to go either for work, business, or pleasure. *Mitchell v. Electric Co.,* 129 N. C., 166." "The defendant company was engaged in the business of manufacturing, producing, leasing, and selling light made from the use of electricity, which is the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire, it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion, or body; latently and without sound, it exists, and being odorless, the only means of its discovery lies in the senses of feeling, communicated through the touch, of a person, which, as soon as done, he becomes its victim. In behalf of human life and the safety of mankind, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition." *Mitchell v. Electric Co.,* 129 N. C., 169.

We do not think there was any error in the other rulings or in the charge to which exceptions were taken.

No error.