ROY SHAW v. NORTH CAROLINA PUBLIC-SERVICE CORPORATION.

(Filed 14 April, 1915.)

**1. Electric Companies — Supervision — Negligence—Trials—Evidence—Nonsuit.**

The plaintiff was employed in a foundry, and for the purpose of seeing how to clean out molds, which was a part of his employment, he was required to hold in his hand an electric light or bulb, connected with the current of electricity furnished by the defendant over its wires and equipment to his employer, and though he had been accustomed to doing this for several years without harm or injury to himself, on the occasion complained of he was suddenly and without warning shocked into insensibility and permanently injured, with evidence that the shock was far in excess of the voltage contracted for by his employer, and caused by a defect in a transformer on defendant's pole on the outside of the building used for lessening the voltage before supplying it to the employer; that the company owned and had sole management and control of the lighting, wiring, and appliances on the outside of the building, and that it had failed in its duty to properly inspect the same and keep them in proper condition. *Held*, upon a motion to nonsuit, considering the evidence in

the most favorable view for the plaintiff, the issue as to defendant's actionable negligence was for the determination of the jury. The charge in this case is approved.

### 2. Trials—Instructions—Requested Prayers—Appeal and Error.

A charge of the court given in response to appellant's request affords him no proper ground for exception on appeal.

### 3. Same—General Charge.

. The refusal to give appellant's instructions in the language of the requests is not erroneous, if it appears that the judge has substantially given them in his own language in the general charge without weakening their legal force and effect, for a substantial compliance therewith is sufficient.

### 4. Electricity—Negligence—Inspection—Res Ipsa Loquitur.

A corporation which supplies electricity for lighting purposes deals in such a deadly instrumentality as to hold it to the highest degree of care in the supervision of its wires and appliances in connection therewith; and where there is evidence that an injury was received by an employee of its customer in using or handling an electric light or bulb in the course of his employment, due to a defective transformer of the company, which had not theretofore occurred under the same circumstances, it is sufficient to take the case to the jury upon the question of the defendant's actionable negligence in failing to properly inspect its wires and appliances; and also for the application of the doctrine of *res ipsa loquitur*, the conditions causing the injury being exclusively within its control.

### 5. Same—Presumptions—Knowledge of Defendant.

Where an employee in a foundry has been injured by an unusual shock in using an electric light or bulb in the course of his employment, caused by a voltage much in excess of that an electric company was supplying under a contract with his employer, and the company used a transformer on one of its poles to reduce the voltage from that carried by the wires before supplying the building, the electric company being sued for the consequent damages may not avoid liability on the ground that there was no evidence shown that its transformer was defective, for the facts being peculiarly within its own knowledge, it must show that it had used the care required of it, or take the risk of an adverse verdict.

### 6. Trials—Evidence—Principal and Agent—Corroboration.

*Held* in this case that a hypothetical question asked an expert witness was correctly framed upon the evidence; that a question asked was admissible for the purpose of contradiction or impeaching the credibility of a witness; and that certain other testimony was competent as not falling within the rule relating to declarations or statements of an agent after the fact.

APPEAL by defendant from *Lyon, J.,* at January Term, 1915, of GUILFORD.

The defendant is a corporation engaged in the business of furnishing electricity to the inhabitants of the city of Greensboro for lighting purposes, and, as such, it contracted with the Cook-Lewis Foundry Com-

pany to supply it with electricity for said purpose, the current not to exceed 119 volts. Plaintiff was employed by the Cook-Lewis Foundry Company as an apprentice in the molding department of its business, and was, besides, learning the trade of molding. On 15 July, 1914, while in the performance of his duty of cleaning out molds, the plaintiff was required to use and hold in his hand an electric lamp or bulb attached to a wire cord, which was connected with the current of electricity furnished by the defendant to his employer, and while holding the bulb close to the mold for the purpose of cleaning it, "he was suddenly hurled from his feet with great force and violence, and was knocked unconscious by the electric current fed to the lamp which he was holding," and received serious and painful injuries, which proved to be of a permanent nature, disfiguring his hand and impairing to some extent its usefulness. He alleged that he had used and handled the electric lamp in the same way for several years, without the slightest harm to himself, and that his injuries were caused by a sudden and considerable increase of the current of electricity by defendant, far in excess of the voltage contracted for by his employer, and that this was the result of a defect in what is known as a transformer, an instrument devised to control the current, by raising or lowering it, and attached to one of defendant's poles in the street near the foundry. It is also charged that this defect was due directly to the negligence of the defendant in not properly inspecting the transformer and keeping it in proper condition, that instrument being wholly within the control and management of defendant and belonging to it. It was also alleged and shown that the increase of the current was so great and it became so energetic and powerful that when one of his coemployees, who had come to his relief, touched his body, he was knocked 10 feet away, and plaintiff could not be separated from the wires until the lever or switch had been turned and the current entirely cut off.

The defendant averred that plaintiff's injuries were not caused by its negligence, but by that of his employer, whose electrical appliances in the foundry were defective and unsafe, and that its transformer was in good condition, as it was examined immediately after the accident by its experts, and found to be in perfect condition and in good working order, and that the real and proximate cause of the plaintiff's injuries, if he sustained any, was that the socket of the lamp which he was handling was defective and not properly insulated; that one of the wires upon the inside of said socket was broken and defective; that the cord from which said socket was suspended had become, through use and age, worn and uninsulated; that the plaintiff, who was standing upon the damp and wet ground, which accelerated or increased the current of electricity, did, by reason of the condition of the ground as aforesaid,

and by reason of the defective socket and cord as aforesaid, received the full voltage of electricity going into the said building, which under the circumstances and conditions above set out is very dangerous and likely to produce injury. That the socket in use in the building of the Cook-Lewis Foundry Company is not the proper socket for the purposes for which it was used, and that it should have been protected by a porcelain or a wooden cover or guard, which is the proper socket covering, when it is to be handled, and especially is this true when the person handling the same is standing upon a damp or wet floor or surface. The defendant further, on information and belief, alleges that the electrical wiring and appliances had been installed in the building of the Cook-Lewis Foundry Company many years prior to the alleged injury to the plaintiff, as set out in his complaint, and that during all these years the said wiring and appliances had never been inspected by the Cook-Lewis Foundry Company or by any one for it. That had an inspection been made of said wiring and appliances, the defects as hereinbefore set out could and would have been readily detected. Defendant also averred that the foundry company had furnished its own electric appliances inside its building, and had full charge and control of the same.

There was evidence to support the respective contentions of the parties. The jury found that plaintiff was injured by the negligence of defendant, and assessed his damages at $4,000. From the judgment upon the verdict, the defendant appealed.

*C. C. Frazier and R. C. Strudwick for plaintiff.*
*J. I. Scales for defendant.*

WALKER, J., after stating the case: The case seems to have been reduced practically to a question of fact, whether the plaintiff's injuries were due to the defective transformer or to the defective incandescent lamp attached to the cord, which he carried in his hands and used for throwing light on the molds, so that he could see how to clean them. The feed wire of the defendant, from which it supplied the current of 119 volts to the foundry, carried as much as 2,300 volts, which is not only a dangerous, but a very deadly current. It appears by strong inference from the evidence that the defective transformer was the cause of the injury, because if it was due to a defect in the lamp, or its socket, it is strange that the accident had not occurred before, as the lamp had been used for a long time for the same purpose and under like conditions. But this question was fairly submitted to the jury, with proper instructions, the burden of proof having been placed upon the plaintiff to establish his cause of action. The court properly overruled the motion for a nonsuit. There certainly was evidence of negligence on the part of the defendant, and the plaintiff was entitled to the most

favorable construction of it, upon such a motion. *Brittain v. Westall,* 135 N. C., 492; *Freeman v. Brown,* 151 N. C., 111; *Lloyd v. R. R.,* 166 N. C., 24. The court told the jury that if the accident was due to a defect in the extension cord or in the socket, plaintiff could not recover, and they should answer the issue accordingly, but that if it was, on the contrary, due to a defect in the transformer caused by the negligence of the defendant, their verdict should be the other way. The charge was full, direct, and intelligible, and instructed the jury strictly in accordance with previous decisions of this Court in like cases. Most of the charge, or at least a large part of it, was given at the request of the defendant, and covered the case in all material respects. There is, therefore, no ground for complaint left to the defendant as to this part of the charge, which was responsive to its own requests for instructions. But it is stated that the court refused to give its third and thirteenth prayers. If the defendant was entitled to have them given as they were framed, which is doubtful, the court gave them substantially in its general charge, and the defendant received the full benefit of the principles of law they embodied. It is not required that they be given in their very language, but the judge can modify the phraseology and use his own language, provided he does not thereby weaken their legal force and effect. A substantial compliance with a request to charge is sufficient, as we have often held. *Rencher v. Wynne,* 86 N. C., 268; *Graves v. Jackson,* 150 N. C., 383. If the general charge of the court is examined with the utmost scrutiny, nothing will be found therein that militates against the law of the case. It was correctly and amply stated throughout.

But the defendant urges that if the injury was caused by a defect in the transformer, whereby a strong and deadly current was sent into the foundry, even in violation of the stipulation of the contract that it should not exceed 119 volts, it has not been shown that the defective condition of the transformer was due to its negligence, as there is no evidence that it knew of such condition before the accident occurred and in time to prevent it. While there may be no evidence that it actually *knew* of it, there is some evidence that it should have known of it, and would have known of it if it had exercised proper care and diligence in respect to it. There are two answers to this contention: (1) Where it appears on the trial of a case that a certain fact, especially if defensive or exculpatory in its character, is peculiarly within the knowledge of the defendant, his failure to give to the jury the benefit of such knowledge, when, were the facts in his favor, he would naturally do so, is a sufficient circumstance to justify the inference that the fact is, in truth, against him; and if he wishes to avoid this inference being made, he should proceed or go forward with his proof. McKelvey on Ev., p. 71,

and cases in note 11. He is not concluded by his silence, but he leaves it open for the jury to decide the fact against him, or, in other words, he exposes himself to an adverse finding as to the facts. (2) We have very recently had occasion to discuss and decide the question as to when it may be necessary for one of the parties to proceed with his proof, if he would not take the risk of a disappointing or unfavorable verdict. We said in *Ridge v. R. R.,* 167 N. C., at p. 518: "This maxim of the law, *res ipsa loquitur,* extends no further in its application to cases of negligence than to require the case to be submitted to the jury upon the face of the evidence as affording some proof of the fact in issue. The jury are not bound to decide accordingly; but if they think proper to do so, when applying their reason and common sense to the case, they may reject the conclusion that there was negligence and ascribe the injury to some other cause. It merely carries the case to the jury for their consideration, and is bottomed upon this logical principle, as decided in many cases: When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the control of it use the proper care, it furnishes evidence, in the absence of explanation by the defendant, that the accident arose from want of such care. *Ellis v. R. R.,* 24 N. C., 138; *Aycock v. R. R.,* 89 N. C., 321 (sparks falling on right of way); *Stewart v. Carpet Co.,* 138 N. C., 60, and *Womble v. Grocery Co.,* 135 N. C., 474 (elevator cases); *Ross v. Cotton Mills,* 140 N. C., 115, and *Morrisett v. Cotton Mills,* 151 N. C., 31 (sudden and unexpected starting of machines); *Haynes v. Gas Co.,* 114 N. C., 203, and *Turner v. Power Co.,* 154 N. C., 131 (loose or unguarded wires charged with electricity); *Fitzgerald v. R. R.,* 141 N. C., 530 (where a piece of coal fell from the tender); *Knott v. R. R.,* 142 N. C., 242 (where sparks flew from the engine, as in the *Aycock case*); and numerous other like cases which the present *Chief Justice* has collected in a note to the *Aycock case,* 89 N. C. (Anno. Ed.), at marg. p. 331." We then referred to *Sweeney v. Erving,* 228 U. S., 233 (citing and quoting with approval from *Stewart v. Carpet Co., supra*), to this effect: "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking; but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they may make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

Now we understand what the rule is and its extent. If a thing happens which ordinarily does not occur if due care is used, it is not only a natural but a common-sense inference that there must have been a lack of such care. It is only *prima facie* and does not necessarily establish a want of care, but is some evidence of it for the jury to consider; and in this sense of the term, *res ipsa loquitur,* it is a question for the defendant, or the party against whose interests the inference may be drawn, to consider whether he will take his chance before the jury without explanation of the unusual circumstance, or whether, especially if the fact be otherwise than the situation and circumstances imply, he will proceed to explain it by proof that there was no negligence, or that, if there was, it was not his negligence. In *Haynes v. Gas Co.,* 114 N. C., at p. 208, *Justice Burwell* (quoting from Whitaker's Smith on Negligence, 423), said: "If the accident is connected with the defendant, the question whether the phrase *res ipsa loquitur* applies or not becomes a simple question of common sense." And again, speaking of an electric wire which was trailing in a street of the city of Raleigh, he said: "Guided by the principle announced in these cases, we come to the conclusion that this plaintiff should have been allowed to say to this defendant: 'The wire you put in the street killed my son while passing along the highway, as he had a right to do. If you are not in default, show it, and escape responsibility.'" He did not mean to lay down the broad principle that this was an affirmative defense—the non-existence of negligence—but that the circumstances pointed to the defendant as the responsible party, and as he had peculiar knowledge of the facts, fairness and justice required that he should come forward and give some explanation if he was not in fault, or his failure to do so might afford some proof to the jury in confirmation of the *prima facie* case and deepen their conviction of his guilt. *Turner v. Power Co.,* 154 N. C., 131. The *Haynes case* also decides that an electric company must use the highest degree of care in protecting persons against the deadly agency which they handle in their business. But this proposition is more fully stated in *Mitchell v. Electric Co.,* 129 N. C., 169: "The defendant company was engaged in the business of manufacturing, producing, leasing, and selling light made from the use of electricity, which is the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire, it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion, or body; latently and without sound it exists, and being odorless, the only means of its discovery lies in the

sense of feeling, communicated through the touch, of a person, which, as soon as done, he becomes its victim. In behalf of human life and the safety of mankind, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition." This was approved by us in *Hicks v. Tel. Co.,* 157 N. C., 519. See also *Turner v. Power Co., supra; Fisher v. New Bern,* 140 N. C., 512; *Houston v. Traction Co.,* 155 N. C., 4; *Harrington v. Wadesboro,* 153 N. C., 437; *Starr v. Telephone Co.,* 156 N. C., 435; *Benton v. Public-service Corporation,* 165 N. C., 354.

The maxim *res ipsa loquitur* applies in many cases, for the affair speaks for itself. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury, but in these cases the surrounding circumstances which are necessarily brought into view, by showing how the accident occurred, contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer." Sh. and Redf. on Neg., sec. 59. The case of *Turner v. Power Co., supra,* seems to be "on all-fours" with this one, as the facts of the two cases are strikingly alike. It was there held, approving *Electric Co. v. Lawrence,* 31 Col., 308, that while a corporation furnishing electric light to others for private gain may not be regarded as an insurer, it owes its patrons the duty to protect them from injury by exercising the highest skill, most consummate care and caution, and utmost diligence and foresight in the construction, maintenance, and inspection of its plant and appliances which is attainable, consistent with the practical operation of its plant. This doctrine is well sustained, not only by our own cases, but by many in other jurisdictions. What the Court said in *Electric Co. v. Letson,* 68 C. C. A., 453, quoted and approved by this Court in *Houston v. Traction Co., supra,* is a full and complete answer to defendant's contention, although we are not required to assent to the whole of it in order to use it as an authority: "The contention of the company amounts to this: that if the wires were properly installed, it cannot be held responsible for their being out of repair, unless it is proved that they got out of repair through its own fault. But this loses sight of the duty of the company not only to make the wires safe at the start, but to keep them so. They must not only be put in order, but kept in order. The obligation is a continuing one. The safety of patrons and the public permits no intermission. Constant oversight and repair are required and must be furnished. Customers who contract for a harmless current to light their houses are entitled to rely upon such inspection and repairs as will effectually guard them

against a dangerous current. They cannot guard themselves. Any attempt to do so would expose them to immediate peril. They must take and use the current on trust, relying upon the protection of the company. In view of this, when a deadly current enters a customer's house and kills him, it is not too much to call the company to explain the existence of the defect which caused the tragedy." We see from these references, and they might be greatly multiplied, that those who use and control so dangerous and subtle an agency as electricity in their commercial pursuits must not be permitted to theorize in regard to its probable effects or speculate upon chances as to results, when the danger to human life is so great and may be so disastrous. It is not too much to require of them the highest practicable degree of care and vigilance in the management of their appliances which carry and conduct this deadly current, for no ordinarily prudent man would bestow less in such circumstances. If it raises expenses to be more watchful and cautious than in ordinary cases where there is no such dangerous agency employed, and thereby profits are reduced, it is far better that it be so than that the toll of human life be alarmingly increased.

While the dealer in electricity may not be an insurer of safety in its use by customers, and other persons coming in contact with it, the care exacted by the law is raised to the highest degree in order to be commensurate with the great danger involved and to safeguard the public. All authorities agree that there must be frequent, if not constant, inspection, and unremitting vigilance, and in this case there is evidence from which the jury could infer that, in this respect, the defendant had failed in its duty; and if it really had not, it should have come forward with the proof that the defect in the transformer (for the jury have evidently found that *it* was defective, and not the socket or cord of the lamp) was not discovered in time to repair it after having made the inspection which the law required, or that it was not discoverable and that the accident occurred without its fault, or was unavoidable by the exercise of the highest degree of care. This was not shown, and in its absence the defendant cannot complain of the verdict, for it was warranted by the evidence as it stood.

The defendant had contracted to furnish a current not exceeding in power 119 volts, and as plaintiff had no control or supervision of the transformer, he could not be expected to know whether it was in order or not. It was in the sole charge of the defendant, upon whom alone rested the duty of inspection and to whom only was it accessible for such purpose. Proper care would, ordinarily, have kept it in good condition and prevented the injury, and defendant alone knew whether that care had been used or whether the injury was due to something beyond its control, a latent or undiscoverable defect, or inevitable accident. The situation surely called for some rational explanation.

The questions to the expert were correctly framed upon the facts in evidence, and properly submitted. *Summerlin v. R. R.,* 133 N. C., 554; *Parrish v. R. R.,* 146 N. C., 125. The question put to defendant's witness, C. E. Scott, was competent for the purpose of contradiction or to impeach his credibility, even if not to show a change in the appliance, as substantive evidence of negligence, under the rule stated in *Lowe v. Elliott,* 109 N. C., 581; *Myers v. Lumber Co.,* 129 N. C., 254; *Aiken v. Mfg. Co.,* 146 N. C., 328. The evidence of the declaration of Scott was competent for the same reason, and does not come within the rule excluding the statements of agents made after the fact.

The court distinctly instructed the jury in its general charge, and also in response to defendant's prayer, using its own language, that defendant would not be liable if the injuries were caused by a defective cord or defective socket, and if they found that to be the case, they should answer the first issue, as to negligence, "No," and that they could only answer it "Yes" if they were caused by the transformer, which defendant negligently permitted to be defective or out of order.

While we have stated that defendant cannot complain of the charge, so far as it assumed that, if the plaintiff's injuries were caused wholly or in part by a defective cord or socket attached to the incandescent lamp, the defendant would not be liable, because if that assumption was correct, the charge in respect thereto was without error, we do not wish to be understood as passing upon the question of defendant's liability, if there was a defect in the lamp, but leave that open for future consideration. As the charge was in favor of defendant, so far as the defect in the lamp is concerned, if the assumption was erroneous there was no resultant harm to the defendant, and when we have referred to the charge in this respect as being in accordance with our former decisions, we mean merely that it was correct in so far as it dealt with the general principles of negligence, as declared in previous decisions of this Court. Our conclusion in this case is based entirely upon the defect in the transformer. Besides, the jury have evidently found, under the charge, that there was no defect in the lamp. The charge as to the measure of damages was correct.

No error.