NANCY COX KISER, ADMINISTRATRIX, v. CAROLINA POWER AND LIGHT COMPANY.

(Filed 3 January, 1940.)

1. **Electricity §§ 7, 11—Evidence held properly submitted to the jury in this action against power company to recover for death caused by electrocution.**

> The evidence tended to show that defendant power company disconnected the electric service to a house following a storm, informed the owner that the house wiring system needed repairs, suggested that he employ an electrician, and promised to reconnect the service on receipt of notice that the repairs had been made, that the owner called an electrical contractor, that the workman sent out by him, instead of properly pulling new wires through the conduit, circumvented the conduit with temporary wires and, further, improperly crossed the wires, resulting in energizing the metal armor of the BX cable attached to the bottom of the floor joist, and reconnected the service contrary to defendant's rules, that intestate, a four-year-old child, while under the house, came into contact with the energized metal armor of the BX cable and was electrocuted, and that defendant, although advised of the owner's desire for immediate restoration of service, failed to make inspection during the seven days elapsing from the discontinuance of the service to the date of notification of intestate's death. *Held:* The evidence is sufficient to support the submission of the issue of negligence and proximate cause in defendant's failure to make due inspection, and fails to disclose intervening negligence on the part of the workman sent by the electrical contractor such as to insulate the negligence of defendant as a matter of law, and defendant's motion to nonsuit was properly denied.

2. **Electricity § 6—**

> In the distribution of electric current a power company *is held* to that high degree of care and foresight which is commensurate with the inherent danger of the instrumentality.

BARNHILL, J., dissenting.
WINBORNE, J., concurs in dissent.

APPEAL by defendant from *Bobbitt, J.,* at March Term, 1939, of RANDOLPH.

Civil action to recover damages for death of plaintiff's intestate alleged to have been caused by the neglect, default or wrongful act of the defendant.

The defendant furnishes electricity to the home of A. J. Cox in Asheboro. On the afternoon of 10 July, 1937, an electrical storm caused

one of the wires in the conduit to burn in two and resulted in a stoppage of the flow of current into the customer's house. The conduit is attached to the outer wall of the house. Complaint was made to the defendant's Asheboro office, and a Mr. Wham responded to the call. Upon investigation he found the facts as above stated, disconnected the wires by pulling the end of the melted wire from the cable and tying it back so that no current could be transmitted to the house wiring system, informed Mr. Cox that he would have to employ an electrician to make the necessary repairs, and on being asked by the customer if he could have lights that night, stated that after the repairs had been made, upon notice to the company "they would be glad to come down and reconnect the service." No such notice was given and the defendant did not reconnect the service, which was permitted to be done only by one of its agents.

The customer engaged an electrical contractor of Asheboro to make the repairs. Baxter Elliott was sent to do the work. Instead of pulling new wires through the conduit, as would have been proper, Elliott circumvented the conduit with two temporary wires and connected these to the wires of the defendant, which he should not have done. Not only this. He crossed the wires which resulted in energizing the metal armor of the BX cable attached to the bottom of the floor joist.

On the afternoon of 17 July, 1937, Leon Kiser, a child four years of age and grandchild of A. J. Cox, while under the house, came in contact with this energized metal armor of the BX cable and was electrocuted.

The case was submitted to the jury on plaintiff's allegation of negligence that the defendant knew or in the exercise of reasonable care should have known the current had been cut back into the house wiring system and failed to make due inspection thereof before the injury.

From a verdict for the plaintiff, assessing damages at $1,500, the defendant appeals, assigning errors.

*Moser & Miller and S. W. Miller for plaintiff, appellee.*
*J. A. Spence and A. Y. Arledge for defendant, appellant.*

STACY, C. J. Defendant disconnected A. J. Cox' electrical service following a storm on the afternoon of 10 July, 1937, informed him that his house wiring system needed repair, suggested that he employ an electrician to place it in proper condition, and promised to reconnect the service upon receipt of notice that the repairs had been made. The customer asked if he could have lights that night. No further communication was had between the power company and its customer until the afternoon of 17 July, 1937, when the company was informed that its customer's grandchild had been electrocuted while under the house.

The jury has found, upon full consideration of the evidence, that the proximate cause of plaintiff's intestate's death was the failure of the defendant to make due inspection of its service under the circumstances disclosed by the record. We cannot say there was error in submitting the case to the jury on this theory. *Small v. Utilities Co.,* 200 N. C., 719, 158 S. E., 385.

A high degree of foresight is required of the defendant because of the character and behavior of electricity which it generates and sells. *Shaw v. Public-Service Corp.,* 168 N. C., 611, 84 S. E., 1010. The defendant's knowledge of its service is supposedly superior to that of its customer's. It is not unreasonable, therefore, in view of the dangerous character of the product, to require the "utmost diligence and foresight in the construction, maintenance, and inspection of its plant, wires, and appliances, consistent with the practical operation of the business." *Turner v. Power Co.,* 167 N. C., 630, 83 S. E., 744. The care required must be commensurate with the dangers incident to the business. And so the law is written. *Haynes v. Gas Co.,* 114 N. C., 203, 19 S. E., 344.

The negligence of Baxter Elliott was not such as to insulate the negligence of the defendant as a matter of law. *Quinn v. R. R.,* 213 N. C., 48, 195 S. E., 85. The defendant's liability is predicated upon its failure to inspect its wires within a reasonable time. It knew that Cox was a regular user of its service. This had been interrupted, the defendant called, and with full knowledge of the facts, including the customer's desire to have the service restored immediately, the matter was allowed to go for seven days without further inquiry or attention on the part of the defendant. Under the circumstances, we think the question of due care was for the jury. What is due care is to be determined by the exigencies of the occasion. *Diamond v. Service Stores,* 211 N. C., 632, 191 S. E., 358.

It is true, the customer was to notify the defendant when the repairs to the house wiring system had been made, so that the service could be reconnected by the defendant, but this was not done. The defendant must have known, or in the exercise of a high degree of care should have known, according to the jury's finding, that the service had been restored in some way by the electrician called by the customer. With knowledge of this fact, actual or implied, the duty of inspection immediately devolved upon the defendant, as such restoration was contrary to its rules.

The conclusion results that the verdict and judgment should be upheld.

No error.

BARNHILL, J., dissenting: The defendant's employee disconnected the wires at the home at which the plaintiff's intestate was killed and "tied them back." They were located on the outside above the porch out of

reach. The circuit was broken so that there was no danger therefrom. To hold that the defendant in this case is liable in damages for its negligent failure to thereafter inspect the wires is to hold that it was its duty to foresee: (1) That the occupant of the house would employ an electrician who would send an incompetent or careless assistant to make the repairs to the house wiring, over which the defendant had no control; (2) that such employee, instead of running the wires through the conduit provided, would install temporary wiring extending under the house to the switch; (3) that he would switch the wires at the terminal, attaching the energized wire to the neutral terminal and the ground wire to the "hot" or charged terminal, thus energizing the switch box and the BX cable; (4) then, contrary to the prevailing custom and in violation of the rules of the defendant, he would connect the house wires to defendant's line, thus charging the house wires with electricity; and, (5) that the plaintiff's intestate, or some other person, would go under the house and come in contact with the energized cable. To my mind this requires a degree of prevision bordering on the omniscient and is far more than the law demands.

The point of delivery of current by the defendant was on the outside of the house above the roof. Its wiring ended there. This is the law under the rules and regulations governing electric service adopted by the Utilities Commissioner under authority duly vested in him by statute, C. S., 1112, subsections (b) (11).

The wiring within the house belonged to and was under the control of the property owner. The defendant had no right, and it was not its duty, to repair or inspect the same. There is no evidence that the defendant's wires were improperly connected by the electrician to the house wires or that an inspection thereof, had it been made, would have disclosed the conditions which caused the death. It is apparent that it would not have done so, for, in the final analysis, the dangerous situation was created by the improper connection of the wires at the switch box.

If it be conceded that the act of the defendant in leaving its energized wires disconnected at the house—in a harmless condition by reason of the fact that the circuit was broken—and in its failure to inspect, constitutes negligence, it was an act of omission, negative in nature. The negligence of the electrician employed by the occupant of the house was active and constitutes the direct, proximate cause of the unfortunate and untimely death of plaintiff's intestate. In my opinion, under no view of the evidence can it be said that the failure of the defendant to inspect its wires in any wise contributed thereto or proximately caused the same.

Under modern conditions when buildings are constructed provision is made for electric lighting. The wires and incidental fixtures are frequently placed on the inside of brick or stone walls. In the selection or

installation of the wires and fixtures the public service corporation has no part. It merely delivers current at the point of intake designated by the owner. While I fully concur in the view that a distributor of electric current should be held to a high degree of care, I feel that to adopt a rule which requires it to inspect and approve such wiring before cutting on its current places upon the public service corporation an unreasonable, and, in most instances, an impossible task.

WINBORNE, J., concurs in dissent.